Staples, J.
It is claimed by the appellant that the property known as the “ Granite Quarry,” in the possession of the appellee, Johnson, was sold under a decree of the circuit court of the United States; that the suit in which that decree was rendered, was brought not for the purpose of procuring a sale, but merely to vacate as fraudulent the lease made to Turner Exall; that he, the appellant, was not a party to that suit; that he had no connection with it; and he received no part of the purchase money.
The exhibits filed fully sustain the appellant in these positions. And if this was the whole case, the lien of his judgments would still be in force, and he might properly invoke the jurisdiction of the state courts to enforce the same against the property in the possession of the appellee. But unfortunately for him this is not the whole case. There are other facts to be considered which conclusively show that the appellant has waived his right to assert this lien by any proceeding or suit in a state court. In order to understand this more clearly, it is proper to inquire into the proceedings in the bankrupt court. In October 1868 the assignee filed his petition in that court, setting forth the real estate *35 Tielonging to Exall, the bankrupt, the number and -amount of the liens thereon; the parties entitled to the same, and asking for a sale of the property, charged of all the incumbrances. Several of the judg.ment creditors united in this petition. Among those ■so uniting were the creditors, under whom the appellant now claims. A decree of sale was accordingly made. Subsequently the assignee filed his bill in the circuit court’of the United States to vacate the lease to Turner Exall as fraudulent. A decree was entered o vacating the lease, and directing a sale of the “ Granite •Quarry.” The property was advertised accordingly; •but the sale was enjoined by Armistead & Cary, creditors, claiming to have a lien upon it for money expended or advanced in developing the quarry. This injunction was awarded by the Hon. John C. Underwood, as judge of the district court, to whom the application was addressed. The decree of sale was set •aside by him, and a rehearing of the cause directed at an adjourned term of the circuit court of the United -States. Afterwards the same judge, sitting in the circuit court however, rendered a decree for the . sale of the property, and under that decree the sale was made, ■at which the appellee became the purchaser. -It would thus seem the various orders and decrees were uniformly entered by the same j udge, presiding indiffer•ently in the circuit court and in the district court. And although the assignee proposed to sell under a decree of the circuit court, he had at the same time the •authority of the district court sitting in bankruptcy, •conferred by the decree of the 12 th October 1868, already adverted to. His reports of the sales were both returned to and filed in the latter court. These reports distinctly set forth the names of the several purchasers, the amount of the purchase money, the *36 charges, costs, fees attending the sales, and the balance . . . , „ ° . remaining m the hands of the assignee for distribution the creditors. ■
it further appears that on motion of John P. Tabb, a preferred creditor, after the reports were so filed, an order was entered in the bankrupt court for an account of the liens upon the estate of the bankrupt and their respective priorities. The special commissioner, O. G.. Kean, appointed for that purpose, notified the creditors that he would take the account on the 9th November 1870, and that to enable them to share in the distribution their liens must be asserted in the bankrupt suit. This notice was served on the appellant, and on the day indicated he, as assignee of B. W. Green, proved his debt as a secured creditor, claiming a lien on the real estate and upon the proceeds of sale in the hands of the assignee. The other judgment held by the appellant, as assignee of William Taylor & Sons, had been previously proved by the latter before the assignment was made.
Three months after this, in January 1871, the following order was entered: “It appearing from the report of the assignee in this cause that there is in his hands, after the payment of all expenses incurred by him in this suit, the sum of $1,577.79, one-half of which was derived from the sale of the realty, and the other half from the sale of the personalty, it is ordered that John Johns, said assignee, do distribute said fund to the parties entitled to the same as ascertained by the report of O. G. Kean, special master, filed herein, respect being had to the priorities declared to exist among them by said report; that is to say $788.89 to those holding liens upon the realty, and $788.89 to those holding liens upon the personalty, after deducting the $100 due to the laborers, and the $36 to the United States, as a *37 joint charge on the two funds and the register’s fees.” This order is signed by W. W. Forbes, register.
It was asserted, in the argument, and it was not troverted, that it is the practice in the bankrupt courts for the register to enter orders for distribution of the assets where there is no controversy. If a party is dissatisfied with the ruling, an appeal is taken to the court for the correction of the errors. It is laid down in the books on Bankruptcy, that while the register is ■subject to the control and supervision of the court, it is, nevertheless, competent for him to convene the creditors, declare dividends and make distribution of the assets. Bump on Bankruptcy 64. However this may be, the order in question is proved to be in the handwriting of the appellant. The fair inference is that it was signed by the register at his suggestion. The language of the order plainly shows that the appellant was well acquainted with the reports made by the' assignee. These reports showed that the granite quarry was sold under a decree of the circuit court, and not of the bankrupt court; that the greater part of the funds in the hands of the assignee was derived from the sale of that property to the appellee, General Johnson. With all this knowledge, the appellant prepares an order for its distribution among the lien creditors according to their priorities, he being an assignee of two of the judgments named in the report of the commissioner.
But this is not all. The papers of the bankrupt court show that the appellant contested the liens of four of the creditors; that he filed exceptions to the report of commissioner Kean; and that on the 24th of ■January 1871, he objected to the discharge of the assignee for various reasons, which were overruled by the register, and he took no appeal.
*38 It thus appears, that the appellant not only proved; his debt and asserted his lien in the bankrupt court* he actively participated as a party in the proceedingg at every step of the adjudication. A creditor having a lien upon the estate of his bankrupt debtor has two courses open to him, either of which he may adopt. He may decline to appear in the bankrupt court, and he will, of course, he unaffected by any proceeding in that court, unless, indeed, the proper steps are taken to sell the estate clear of all encumbrances: or, the creditor may elect to proceed in the bankrupt court, prove his debt there, and rely upon his security. Should he adopt the latter course, it is an election to proceed in the bankrupt court, and a waiver of his right to institute any suit or proceeding-at law or in equity which is in any way inconsistent with his election to obtain satisfaction of the debt under the bankruptcy proceedings. This principle is well settled. Bump on Bankruptcy, page--, Wilson v. Capuro, 41 Calif. R. 345; Hoyt v. Freel, 8 Abb. Pr. N. S. 220; Haxtun v. Corse, 2 Bar. Ch. R. 506.
The only case" cited for the appellant, as holding a contrary view is that of “ Be Bland,” decided by Jackson, J., and published in 3 Hat. Bank. Reg. 324. That was, however, a case arising in a bankrupt court, and the question was as to the mode of administering the assets in that court. Here the question is, whether a creditor having elected to assert his lien in a bankrupt court, having made himself a party to the proceedings in that court, can afterwards resort to a state tribunal to enforce his lien against the same property which was the subject of adjudication in the bankrupt court. According to the Virginia practice, a creditor may go into a court of equity to enforce his lien; other creditors having liens may come in by petition, or, when *39 there is a decree for an account, they may prove before a commissioner. In either case they are considered parties to the suit, and are bound by the Will it be maintained that a creditor thus coming in, proving his debt, excepting to commissioner’s reports, contesting the liens of other creditors, and in every way identifying himself with the case, is at liberty to resort to another court for the assertion of the same lien against the property in the hands of a bona fide purchaser.
This principle applies very strongly to the district court of the United States, which, in matters of bankruptcy, has exclusive jurisdiction in adjudicating the rights of creditors, liquidating liens, settling conflicting claims to pi’iority, and in distributing the assets of the bankrupt. If the creditor fails to realize here what is justly due him, it is not for the want of power in the bankrupt court to afford relief, but because of some error or mismanagement in the conduct of the cause, to be corrected by the court itself or some other tribunal having appellate jurisdiction over that court.
It is no doubt true that the appellant failed to receive any part of the fund. Whether he was rightfully excluded it is impossible for this court to undertake to decide. The report of commissioner Kean, to which appellant excepted, shows there were liens prior to those of the appellant, amounting to fifteen or eighteen hundred dollars, probably more than sufficient to absorb the entire fund. The result would perhaps have been different if appellant’s exceptions had been sustained. If any error was committed to the prejudice of the judgment creditors of the bankrupt, it was in the decree sustaining the claim of Armistead & Cary. This claim was strongly contested by the assignee, but was approved by a judge of the district court, and al *40 lowed by a judge of the circuit court. With the lights before us how can we review this decision ? By what can we pass upon it at all. All that can be saj(j is, if the claim was just and valid, the appellant is not prejudiced, and under no state of circumstances could he ever have realized any part of his judgments. The reason is, that this claim and the prior judgments would have left nothing for the satisfaction of the appellant’s judgments. On the other hand, if the claim of Armistead & Cary was not just, if the decrees allowing it are erroneous, the remedy, if any, was by application to the bankrupt court to interfere, or by appeal to the proper appellate court to correct its error. The decision of Chief Justice Wait in Re Taliaferro, cited by the appellant, is authority for this proposition. That was an appeal to the circuit court from erroneous orders and decrees of the bankrupt court, and plainly indicates the course the appellant ought to have pursued in this case.
If the appellant is not bound by the proceedings in the bankrupt court, neither are the other creditors. If he may institute a separate suit, so may each one of them) But this will scarcely be claimed. In any event, all the creditors having liens ought to be before the court, in order that all conflicting claims and questions of priority may be settled in one suit, and the purchaser quieted in his possession and title. If William Sutton & Co., and Armistead & Cary were justly entitled to priority over the appellant, the appellee, whose money paid those debts, ought to have credit for the amount. He is clearly entitled to be subrogated to the rights of those creditors. In effect this court, or the court below, must re-open the proceedings in bankruptcy, revise the decisions of that court, and *41 proceed to administer the assets of the bankrupt. The statement of the proposition is its own refutation.
There is nothing in the record before us casting least suspicion of unfairness upon the appellee. He appears to have been a bonajide purchaser at a public sale. He complied with all the terms by paying the several instalments of the purchase money. If the property was sold at a sacrifice, there is nothing to show it. If the proceeds of sale were misapplied, there is nothing to connect the appellee with it. It was said in the argument, although no issue of the kind is made in the pleadings, that the appellee was the attorney of the assignee, and as such he was incapable of purchasing at a sale made by the assignee. If there is anything in the objection, it ought to have been made in the bankrupt court; and not in this collateral way in another court. That question has been effectually settled by repeated adjudications of this court. See Cline v. Catron, 22 Gratt. 378, where the authorities are cited.
Hpon the whole, for the reasons stated, I am of opinion the decree of the circuit court is correct, and must be affirmed.
The other judges concurred in the opinion of Staples, J.
Decree aeeirmed.