# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

## SMITH, TRUSTEE, &c., v. THARP et al.

### Decided November 27, 1880.

1. Mere lapse of time will not raise a *legal* presumption of the payment of taxes and damages on lands returned delinquent, though in connection with other circumstances it might justify the jury in finding as a matter of fact, that these taxes and damages had been paid.

2. The payment by a tenant in common of one undivided fourth of a tract of land of one fourth of the taxes and damages, when the whole tract has been returned delinquent for the non-payment of taxes, will not prevent the forfeiture of the entire tract of land or of any part thereof.

3. When a tract of land was returned delinquent for the non-payment of taxes in 1800 and 1801, and these taxes were never paid, under the statute-law of Virginia the forfeiture of this land to the State became complete on the 1st day of. October, 1834. Subsequent acts gave further time to July 1, 1838, to redeem these forfeited lands, but the forfeitures, which became complete on October 1, 1834, were not released except in such cases as the owner availed himself of the privilege of redeeming under these subsequent acts.

4. The auditor's certificate of the fact and time of the return of any real estate as delinquent is only *prima facie* evidence thereof; and it would therefore be error for the court to instruct the jury to infer from any such certificate, that land had been forfeited ; the instruction should be, that if from the evidence the jury believe the facts stated in such certificate, they should draw such inference.

Writ of error from a judgment of the circuit court of the county of Ritchie, rendered on the 22d day of March, 1859, in an action of ejectment in said court then pending, in which George Smith, trustee, &c., of John Hoge,

---

1880
Special Term.

Smith, Trustee, &c.,
v.
Tharp *et al.*

| | |
|---|---|
| 17 | 221 |
| 37 | 772 |
| 17 | 221 |
| 38 | 40 |
| 38 | 278 |
| 38 | 583 |
| 38 | 669 |
| 38 | 715 |
| 17 | 221 |
| 45 | 426 |
| 17 | 221 |
| e56 | 575 |
| 57 | 258 |
| e57 | 259 |
| 17 | 221 |
| 58 | 338 |
| 17 | 221 |
| 62 | 184 |

1880
Special Term.

Smith, Trustee,
&c.,
v.
Tharp et al.

deceased, was plaintiff and Timothy Tharpe and others were defendants, granted upon the petition of said Smith.

Hon. M. Edmiston, late Judge of the circuit court of Ritchie county, rendered the judgment complained of.

GREEN, President, furnishes the following statement of the case:

John Hayes, lessee, on April 15, 1849, brought in the circuit court of Ritchie county an ejectment suit against Timothy Tharp, Andrew Law, Robert Somerville, George Collins and Henry Hayden for ten thousand six hundred and twenty-five acres of land in Ritchie county, a part of a tract of twenty thousand acres patented to Wm. Deakins. The declaration was served on the defendants, usual consent rule confessing lease, entry and ouster was entered, and they pleaded the general issue, and an order of survey was made and executed. John Hoge having died, the case was on April 19, 1850, revived in favor of George Smith, trustee of the estate of John Hoye. On March 21, 1859, the case was tried, and the jury found a verdict for the defendants. During the progress of the trial the court at the instance of the defendants gave an instruction to the jury, to which the plaintiff's counsel excepted, and so much of the evidence, as shows the pertinency of this instruction, is certified by the court. This evidence so certified shows, that the plaintiff proved, that this twenty thousand acres of land was patented to Wm. Deakins June 19, 1797, he died in 1798, and by his will he devised one half of this tract of land to Francis Deakins, one fourth of it to Leonard Manbury Deakins, and the remaining fourth to Paul Hoye. Francis Deakins died in 1804, and by his will he devised two thirds of his half of said tract of land to Leonard Manbury Deakins and the remaining one third of his moiety of this tract of land to Paul Hoye, so that then Leonard M. Deakins owned seven twelfths of this tract of land and Paul Hoye the remaining five twelfths thereof. Paul Hoye died in 1816 and devised this un-

1880
Special Term.

Smith, Trustee,
&c.,
v.
Tharp et al.

divided five twelfths of this tract of land to John Hoye, the plaintiffs' lessor. The plaintiffs also introduced testimony tending to prove the boundaries of this tract of twenty thousand acres as laid down on the survey and map, and that the defendants were, when the suit was instituted, in the possession of land within these boundaries. The survey and map showed what land was claimed by the defendants.

The defendants to prove that the plaintiff had forfeited to the State this tract of land for the non-payment of taxes and could not therefore recover in this suit, introduced in evidence the certificate of G. W. Clutter, auditor of public accounts, which was as follows:

"I, George W. Clutter, auditor of public accounts, hereby certify, that I have caused the land-books of the commissioners of the revenue for the county of Harrison, and the list of lands delinquent in the said county for the years, 1800, 1801, 1806, 1807, 1809, 1810, 1811, 1812 and 1816 to be examined; and that on each of the said books of said commissioners for the years 1800 and 1801, a tract of twenty thousand acres of land without description as to location was entered in the name of William Deakins, and charged with $38.40 tax thereon, making $76.80; and that in each of the said years 1800 and 1801 the said tract of twenty thousand acres of land, charged in the name last aforesaid, was returned to this office as delinquent for the non-payment of taxes assessed thereon for each of the years last aforesaid. I further certify, that William Dakon is charged on the land-books of the commissioner of the revenue for the county of Harrison in such of the years, 1806, 1807, 1809 and 1810, with a tract of twenty thousand acres of land, without description as to location and assessed with $24.00 tax thereon for each of the four years last aforesaid; that the said tract of twenty thousand acres of land, charged in the name last aforesaid, was returned to this office as delinquent for the non-payment of taxes assessed thereon for each of the years in which it was

1880
Special Term.

Smith, Trustee,
&c.,
v.
Tharp et al.

so charged as aforesaid. I further certify, that William Dakon is charged on the land-books of the commissioner of the revenue for the county of Harrison in each of the years, 1811, 1812 and 1816, with a tract of fifteen thousand acres of land, without description as to location, and assessed with $3.32 tax thereon for each of the years 1811 and 1812 and with $7.65 tax thereon for the year 1816; and that the tract of fifteen thousand acres charged as last aforesaid, was returned to this office as delinquent for the non-payment of the taxes assessed thereon, or any part thereof, in each of the years 1811, 1812 and 1816. I further certify, that John Hoye is charged on the land-books of the commissioner of the revenue for the county of Harrison in each of the years 1811, 1812 and 1816, with a tract of five thousand acres of land without description as to location, and assessed with $1.44 tax thereon for each of the years 1811 and 1812 and with $2.55 tax thereon for the year 1816; and the tract of five thousand acres of land, charged in the name last aforesaid, was returned to this office delinquent for the non-payment of taxes assessed thereon in each of the years 1811, 1812 and 1816. I further certify, that the taxes for the non-payment of which the foregoing tracts of twenty thousand, fifteen thousand and five thousand acres of land, charged in the name of William Deakins, William Dakon and John Hoye respectively, had been returned to this office as delinquent, have never been paid, so far as the records of this office disclose.

"Given under my hand at the auditor's office, in the city of Richmond, the 11th day of July, 1856.

"G. W. CLUTTER,
"Auditor Public Accounts."

The defendants for a like purpose introduced two other certificates of G. W. Clutter, auditor of public accounts, one dated March 28, 1854, and the other July 24, 1856. In the first of these certificates the same facts are stated, but more vaguely, and nothing is stated about the lands

charged to John Hoye. The certificates states that

twenty thousand acres were charged from 1799 to 1810 inclusive, except for the year 1808, when there were no commissioner's books, and fifteen thousand acres from 1811 to 1816 inclusive; that the twenty thousand acres were charged to William Deakins, sometimes spelled Dakon, sometimes Deakon, and sometimes Deacons, and the fifteen thousand acres to said Deakins, sometimes spelled Dakon; that these twenty thousand acres were taxed in the year 1807 with $24.00, and returned delinquent that year for only $20.00; that the said twenty thousand acres were not returned delinquent for the year 1799, nor the fifteen thousand acres for the years 1813, 1814 and 1815; and that though the twenty thousand acres were returned delinquent for the years 1802, 1803, 1804 and 1805, yet the taxes for these four years were afterwards paid into the treasury under a warrant from the auditor. It was also further certified, that William Deakins was not charged on the land-books from the years 1817 to 1838 both inclusive with any tract of land described as containing twenty thousand or fifteen thousand acres either in Harrison or Lewis counties. The certificate dated July 24, 1856, differs from this in asserting, that these twenty thousand acres of land are not charged to William Deakins in 1798 or 1799; and it states that for the years 1800, 1801, 1802, 1803, 1804 or 1805 no tract of land of twenty thousand acres was charged to Francis Deakins, Leonard M. Deakins and Paul Hoye, or either of them; and for the years 1806, 1807, 1809, 1810, 1811, 1812 or 1813 no tract of twenty thousand acres or fifteen thousand acres was charged to Leonard M. Deakins, William F. Deakins, William Deakins, Francis W. Deakins, Francis Deakins, Paul Hoye and John Hoye, or any of them. (These are the names of the various devisees in the will of Francis Deakins). And it is further certified, that neither the twenty thousand nor fifteen thousand acres were charged for either of the years 1814, 1815 or 1816 to Leonard M.

29

1880
Special Term.

Smith, Trustee,
&c.,
v.
Tharp et al.

Deakins and John Hoye, or either of them ; and that on the land-books of Lewis county for the years 1830, 1831, 1832, 1833, 1834, 1835, 1836 and 1837, or any of them, there is not charged any tract of twenty thousand acres, fifteen thousand acres or five thousand acres to any devisee named in any of the aforesaid wills, all of their names being specified in this last certificate.

The defendants also produced the land-books of Ritchie county for the years 1844, 1845, 1846 and 1847, and no lands were therein charged to Wm. Deakins, Francis Deakins, Leonard M. Deakins, Paul Hoye, John Hoye, W. F. Deakins, or Francis W. Deakins, or the estate of any of them. The defendants also proved that said land was in the county of Harrison till 1816, when Lewis was formed, and in Lewis till 1843 when Ritchie was formed.

The plaintiff, to rebut this evidence, proved by the certificate of G. W. Clutter, the auditor, dated September 20, 1866, that these vouchers were on file in his office, to wit, these two receipts of Geo. W. Dixon.

"$24.74.          TREASURER'S OFFICE, Nov. 12, 1831.

Sir : Received of John Hoye $24.74, on account of the redemption of his land returned by the sheriff of Harrison county, for the non-payment of taxes thereon for the years 1810, 1811, 1812 and 1816, in the name of the said John Hoye, two hundred and thirty-six, eight hundred and sixty, one thousand six hundred and fifty, one hundred, and five thousand acres.

"GEORGE W. DIXON."

On the back of this receipt was this memorandum : "Memo.—The taxes on the within mentioned tract, seven thousand two hundred and thirty-six acres, are paid for the years 1810, 1811, 1812 and 1816, on the tract of five thousand acres for the years of 1811, 1812, and 1816, and on the remaining tracts to wit, eight hundred and sixty, one thousand six hundred and fifty, and one hundred acres for the year 1811 only."

The second receipt was :

" $155.60. TREASURER'S OFFICE, Nov. 12, 1831.

Sir : Received of John Hoye $155.60, on account of the redemption of his land, returned by the sheriff of Harrison county for the non-payment of taxes thereon, in the name of William Deakins, one fourth of a tract of twenty thousand acres.

" GEORGE W. DIXON."

Also a third receipt so certified as in the auditor's office as follows :

" $100.80. TREASURER'S OFFICE, March, 14, 1838.

" Received of John Hoye and the heirs of Francis Deakins and William Deakins, $100.80, on account of the taxes and damages on twenty thousand acres of land, situate on the waters of the right hand fork of Hughes' river from the years 1817 to 1837 inclusive, the same having been heretofore omitted, and being now certified by the commissioner of the revenue according to law.

" WM. F. TAYLOR."
" To the Auditor."

They also produced an extract from the commissioner's books of Lewis county for 1838 showing this tract of twenty thousand acres, described as above, charged to John Hoye and the heirs of William and Francis Deakins and the back taxes and damages charged up from 1817 to 1837 inclusive.

The plaintiff in rebuttal also produced a deed from Leonard M. Deakins and John Hoye, executors and devisees of Francis Deakins, who was the executor and devisee of William Deakins, conveying to Elisha W. Williams among other lands " five thousand acres situate in Harrison county being an undivided fourth part of a tract of land of twenty thousand acres granted to William Deakins the 19th of June, 1797." This deed was dated November 25, 1809. The plaintiff also produced a deed dated ten days thereafter from Elisha W. Williams to John Hoye conveying the same land described in like manner to him. The counsel for the plaintiff stated that

1880
Special Term.

Smith, Trustee,
&c,
v.
Tharp et al.

he claimed nothing under these deeds; and the case having been submitted to the jury after this evidence had been produced, the defendants' counsel moved the court to instruct the jury as follows; and the court did so instruct the jury :

" If the tract of twenty thousand acres of land granted to William Deakins on the 19th day of June, 1797, was entered on the land-books of the commissioner of the revenue for the county of Harrison for each of the years 1800, 1801, 1806, 1807, 1809, 1810, 1811, 1812 and 1816 and charged on each of the said books for the said years 1800 and 1801 in the name of said William Deakins with $38.40 tax thereon for each of these years; on each of said books for the said years 1806, 1807, 1809 and 1810 in the name of William Dakon with $24.00 tax thereon for each of these years; that five thousand acres, an undivided part of the said tract, were charged on each of the said books for the said years 1811, 1812 in the last mentioned name, with $3.32 tax thereon for each of the years; and on the said book for the year 1816 in the last mentioned name with $7.65 tax thereon for that year; that five thousand acres, an undivided part of said tract of land, were charged on each of the books for the said years 1811 and 1812 in the name of John Hoye with $1.44 tax thereon for each of those years; and on the said book for the year 1816 in the last mentioned name with $2.55 tax thereon for that year; and that the land aforesaid was in each of the years aforesaid delinquent for the non-payment of the taxes charged thereon as aforesaid for these years respectively, except to said tax for the year 1807, and for the non-payment of $20.00 thereof; the length of time that has elapsed since the returns of the delinquency aforesaid is not sufficient to create the presumption of the payment of the said taxes; and the payment in the year 1831, by John Hoye of one fourth of the taxes aforesaid for each of the years aforesaid, upon an undivided fourth of the land aforesaid, with damages thereon, would not prevent a forfeit-

ure thereof; but the proper inference from the facts aforesaid, and the certificate of the auditor of public accounts dated the 11th day of July, 1856, and the receipts of George W. Dixon dated the 12th day of November, 1831, is that the said land was, in the year 1834, forfeited and vested in the president and directors of the literary fund, and that the payments aforesaid in the year 1831 by the said John Hoye would not afterwards have the effect to divest the title so vested, and vest the same or any part thereof, in the said John Hoye." To the giving of which instruction the plaintiff by his counsel excepted.

Upon the verdict of the jury in favor of the defendants the court on March 22, 1859, rendered a judgment in favor of the defendants, that the plaintiff take nothing by his action, and that the defendants go thereof without day and recover against George Smith, trustee, &c., their costs about this defence expended.

The lessor of the plaintiff, George Smith, trustee, &c., then applied by petition to the Supreme Court of Appeals of Virginia at Lewisburg for a writ of error, which was granted.

As this cause was pending on June 19, 1863, in the Supreme Court of Appeals of Virginia at Lewisburg, and the plaintiff in error failed to procure and deliver to the clerk of this court a proper transcript of the record thereof, and cause the same to be docketed in this court within the time prescribed by the act of February 27, 1866, this cause was on January 28, 1868, dismissed on motion of the attorney for the defendants in error; but on July 10, 1868, it was on motion of the attorney for the plaintiff in error docketed in this court under the act of March 5, 1868. And it was continued from time to time by consent of parties or for reasons appearing to this court till June 11, 1880, when it was submitted for hearing. The attorneys for the plaintiff in error did not argue the case before this court either orally or in writing, but relied on their petition only; and the de-

1880
Special Term.

Smith, Trustee,
&c,
v.
Tharp et al.

fendants in error did not argue it orally, but submitted a short brief stating merely the points on which they relied.

No appearance for plaintiff in error.

*Lee* for defendants in error.

GREEN, PRESIDENT, announced the opinion of the Court:

The only question presented by the record is: Was the instruction given by the court erroneous; and if so, was this error prejudicial to the plaintiff in error? The counsel for the defendants in error in his printed brief states, that he will insist also 1st, " that this tract of land was forfeited for failure' to enter the same upon the books of the commissioner of the revenue of the proper county, and to have them charged with the proper taxes thereon, for the several years for which the same was shown to have been admitted, and therefore that the plaintiff was not entitled to recover. 2d. That by reason of the said forfeitures the plaintiff could show no title to the premises claimed, and was not and could not be prejudiced by the instructions given to the jury. 3d. That upon the whole evidence it appearing that the lessor of the plaintiff had no title to the premises, this court would not disturb the verdict by reason of any instructions that the court might have given the jury." But these propositions have not been argued before this court either orally or in writing. And it seems to me they are without any substantial foundation.

It is true that if the evidence certified by the court below was all the evidence submitted to the jury, it would be very clear that the plaintiff had forfeited this land by his failure to enter the same upon the commissioners' books and have it charged with the proper taxes. The act of February 27, 1835, (See Session Acts of 1834-5, ch. 13, § 2, p. 12,) expressly provides, " That every owner of a tract of land shall on or before July 1, 1836,

enter on the books of the commissioners of the county, wherein such tract of land lies, such tract of land and have it charged with all taxes and damages in arrear, and actually pay the same, and upon his failure to do so such tract of land, if not then, February 27, 1835, in actual possession of the owner, should become forfeited to the commonwealth after July 1, 1836." The time for making this entry of omitted lands, when they had not been omitted since 1831, was extended by the act of March 23, 1836, to November 1, 1836. See Session Acts of 1835-6, ch. 3, § 1, p. 7. Neither the possession of the land nor the entry of it on the commissioners' books, after the land became under those acts absolutely forfeited, could divest the title of the commonwealth. See *Ushers' heirs* v. *Pride*, 15 Gratt. 200 ; *Postlewait* v. *Wise*, *supra.*

But, for all that appears in this record, there may have been proof before this jury showing, that the plaintiffs were in the actual possession of the land in controversy of February 27, 1835, in which case it would not have been forfeited under the act of that date. In fact as the evidence before the jury is not all certified; and this court cannot say, that the plaintiff failed to show title to the land, or that the plaintiff could not be prejudiced by improper instructions given to the jury. The question must therefore be considered, whether the instructions actually given by the court were erroneous, and if so whether upon the face of the instruction itself, including the evidence certified as a part thereof, it appears affirmatively, that the plaintiff could not have been injured by such erroneous instruction.

The law in force in 1800, when this tract of land was entered on the commissioner's books of Harrison county, where it lay, was the act passed December 13, 1792. See Shepherd's Acts, vol. 1, p. 61, ch. 22, § 35, (Rev. Code of 1819, ch. 183, § 88, vol. 2, p. 39), which enacted : " In case the tax on any tract of land within this commonwealth shall not be paid for the space of three years, the

1880
Special Term.

Smith, Trustee,
&c.,
v.
Tharp et al.

right to such lands shall be lost, forfeited and vested in the commonwealth; and it shall be lawful for any person to acquire a title to any land so forfeited in the manner prescribed by law." Numerous acts of the Legislature permitting the redemption of land, which had been forfeited or returned delinquent, for short periods of time after the passage of these several acts were subsequently passed; this extension being generally for one or two years after the passage of the acts, but sometimes for a shorter period. See Session Acts of 1808-9, ch. 14, p. 22; Session Acts of 1810-11, ch. 15, p. 16; Session Acts of 1811-12, ch. 18, p. 26; Session Acts of 1816-17, ch. 20, p. 25; Session Acts of 1817-18, passed February 23, 1818; Session Act passed February 24, 1820; Acts of 1819-20; Session Acts of 1824-25, ch. 12, p. 17; Session Acts of 1825-26, ch. 4, p. 8; Session Acts of 1826-27, ch. 3, p. 7; Session Acts of 1827-28, ch. 4, p. 8.

In 1816, by an act passed February 26, (See Session Acts of 1815-16, p. 11, ch. 4, § 4), it was enacted, that in all cases of lands returned delinquent for the non-payment of taxes *thereafter* they might be redeemed by payment into the treasury made before January 1, in every year, in which said lands might be offered for sale for such delinquency. See Rev. Code of 1819, vol. 2, p. 58, ch. 183, § 87. And on February 20, 1817 it was enacted, that no lands should thereafter be exposed for sale except in the manner thereafter to be provided by law; but such arrears of taxes and damages should continue to be a lien upon the lands, on which they were chargeable. See Session Acts of 1816-17, ch. 20, § 2, p. 26; 2d vol. R. C. 1819, p. 39, ch. 183, § 88.

By the Act of April 1, 1831, Sup. R. C. p. 345, §2, it was enacted, that lands returned delinquent for 1820 or any previous year, if not redeemed before the 1st of January, 1832, were forfeited; and lands returned delinquent for any year subsequent to 1820 and previous to 1831 were forfeited, if not redeemed before the 1st of

1880
Special Term.

Smith, Trustee,
&c.,
v.
Tharp et al.

November, 1833. And by the acts of December 16, 1831 and March 10, 1832, further time of redemption upon all such lands was given until the 1st of April, 1834. The period of redemption was extended by the act of March 11, 1834, to the 1st of October, 1834. The act of February 27, 1835, §1, gave further time, until the 1st of July, 1836, for the redemption of such lands returned delinquent, and which became vested in the Literary Fund on October 1, 1834. The act of March 30, 1857, extended the time for the redemption of such forfeited lands until the 15th of January, 1838; and the act of March 1, 1838, extended the time to the 1st day of July, 1838, when the period of redemption expired. The forfeiture of lands returned delinquent became complete on the 1st day of October, 1834. The subsequent acts treated them not as delinquent merely, but as lands forfeited; and although further time to redeem was given, the forfeitures which had accrued by prior laws were not redeemed, except in such cases where the owner availed himself of the privilege to redeem. See *Staats* v. *Board*, 10 Gratt. 400; opinion of Allen, Judge, in *Usher's heirs* v. *Pride*, 15 Gratt. 198 and 199.

It appears by the evidence certified by the court, that William Deakins, the original patentee of the land in controversy, died in March, 1798, in Montgomery county, Maryland, his will being dated in that month, and in the same month it was probated in that county. After that in the years 1800 and 1801, this land was taxed in his name and not in the name of his devisees. The R. C. of 1819, ch. 183, §13, p. 19 provides, that the lands of any person after his decease shall be charged to his estate, until it shall appear of record in the court of the county, where the land lies, to whom such land ought to be transferred. This act was passed February 9, 1814. See Session Acts of 1813, 1814, ch. 3, §5, p. 17. From the facts certified it does not appear, that when the land was so taxed in the name of William Deakins in 1800 and 1801, and when taxed for many years after-

30

1880
Special Term.

Smith, Trustee,
&c.,
v.
Tharp et al.

wards in the name of William Dakon, that the records of the court of Harrison county, where the land lay, showed to whom such land should be transferred. It appears also from the evidence, that this tract of land was not entered on the commissioner's books in 1800 and 1801, in the name of the devisees of William Deakins, but only in his name. It also appears, that one fourth of the taxes, for which this land was returned delinquent in the name of William Deakins, was paid on account of its redemption to the treasurer on November 12, 1831. If this provision in the Code of 1819, §13 of ch. 183, 2 R. C. p. 15, had been in force in 1800, this entry of the land in the name of the patentee and its forfeiture in that name would have concluded the devisees and those claiming under them under these circumstances.

In the case of *Usher's heirs* v. *Pride*, 15 Gratt. 199, the land was put on the commissioner's books in the name of the patentee after his death, and forfeited in that name. The circumstances under which it was done were weaker in justification of the validity of such entry than in this case. The court did not deem it necessary to decide whether the entry was valid; but President Allen, in delivering the opinion of the court, says: "I think, however, the entry in the names of the patentees concludes the heirs and purchasers claiming under them, and they were forfeited for the delinquency in failing to pay the taxes charged thereon." And such, I apprehend, would be the case if the patentee, William Deakins, had died after the passage of this act, ch. 183, § 13, Rev. Code of 1809, p. 15, which was in force in 1814, under the circumstances appearing in this case. Does the fact that he died prior to the passage of this act alter the case in this respect? When William Deakins died in 1798, there was no statute law, which I have been able to find, giving any express directions as to how, on the death of a land-owner, his land was to be taxed on the commissioner's books. But the act passed December 13, 1792,

1880
Special Term.

Smith, Trustee,
&c.,
v.
Tharp et al.

(see Shepherd's Statutes, p. 54, ch. 22, § 7,) in force in 1800, directed the proper clerks to deliver to the commissioners annually, a list of the conveyances and partitions recorded within the preceding year ; and the commissioners were required to tax the lands accordingly. But as no provision was then made requiring the commissioners of lands to change the manner of charging lands on the death of the owner, I am of the opinion, especially if the records of the county did not show to whom the land after the death of the owner belonged, or that he was dead, that the entry after the death of the owner of the lands in his name concluded then the devisees or heirs, and if returned delinquent the land might be forfeited. I need express no opinion as to whether the entry of the land subsequently in the name of William Dakon and its forfeiture could conclude the heirs of William Deakins, as the entry of this land in 1800 and 1801 would conclude them.

Having considered what was the statute law applicable to this case we will now examine the question, whether the instruction given by the court in this case was erroneous to the prejudice of the plaintiff. Though but one instruction was given by the court, it really included several distinct instructions. The first is, that if this land was entered in 1800 and 1801 in the name of William Deakins, the patentee, and afterwards for a number of years in the name of Wm. Dakon, and then in the name of the plaintiff, John Hoge, and if the jury believe that this land was in each of these years named returned in those names delinquent for the non-payment of the taxes charged thereon, the length of time that has elapsed since the returns of the delinquency is not sufficient to create the presumption of payment of these taxes. It is true, that after a lapse of twenty years the law from such lapse of time alone presumes the payment of a debt due from one person to another; and even in a shorter time, if the circumstances proven tend to show payment, the jury may as a matter of fact properly

Syllabus 1.

1880
Special Term.

Smith, Trustee
&c.,
v.
Tharp et al.

find, that payment has been made. But the rule, that twenty years alone raises a presumption of law, that a debt has been paid, has no application, when the debt is due to the State. The reasons, on which the rule is based, do not apply, when the debt is due to the State. On the contrary no presumption of payment arises from the failure of the State to collect a debt for twenty years, as it does in the case of an individual. The maxim, *nullum tempus occurrit regi,* applies to such a case. So stringent is the application, that when a debt is due the State, a statute of limitations though general in its terms will not bar the State. It can only be barred by a statute, which expressly states, that the State is to be included in its operation.

The plaintiff in error, to sustain his objection to this part of the instruction, in his petition relies on *Johns* v. *Miller's lessee,* 12 Grat. 456, 457. In that case the parties by consent entered of record, waived their right to have a jury and submitted the whole matter of law and fact to the court. It was distinctly proven in the case, that the taxes for every year from 1801 to 1839 inclusive had been paid or released; but it did not affirmatively appear that the taxes from 1797 to 1800 had been paid. And the court held under this state of proof, as I understand their decision, that it would be presumed as as a matter of fact and not as a presumption of law, that the taxes from 1797 to 1800 had been paid. Judge Samuels in delivering the opinion of a majority of the court on this point says, pages 456, 457 : " The State's taxes from 1797 to 1800 after this lapse of time we must presume to have been paid ; or if not paid, they were certainly released by act of assembly. It is distinctly proven that the taxes for every year from 1801 to 1839, inclusive, have been paid or released by law." The most that is here intimated is, that as a matter of fact after a great lapse of time with the aid of other circumstances taxes may be presumed to have been in fact paid. The instruction in the case before us does not conflict with

1880
Special Term.

Smith, Trustee,
&c.,
v.
Tharp *et al.*

this. It simply states that *mere* lapse of time will not raise a presumption of *law* that taxes have been paid.

But the plaintiff in his petition for a writ of error in this case says: " Even if the length of time *alone* were not sufficient to create the presumption of payment, it was still error in the court to give the instruction, because there was other evidence in the cause, which aided the presumption of payment, and the instruction consequently tended to mislead the jury." I am unable to see how it so tended. If there was other evidence, such as is alluded to, the plaintiff had a right to have the jury instructed to consider this evidence, and if satisfied thereby and from lapse of time that these taxes were actually paid in fact, that then the land could not be held to have been forfeited to the State. He asked no such instruction ; and I presume he did not do so, because it was clear that these taxes had not been in fact paid. And the instruction given was asked by the defendant simply to prevent his insisting before the jury, that the lapse of time *alone* raised a conclusive legal presumption, that the taxes had been paid. The fact that as late as November 12, 1831, the plaintiff himself paid one fourth of these taxes, he then owning one fourth of this tract of land, amounts to an admission, that the other three fourths of these taxes had not in fact been paid.

The second part of the instruction is, that this payment of this one fourth of the taxes aforesaid and damages thereon on one undivided fourth of the land would not prevent a forfeiture thereof. This seems to me to be most obviously law, for the statute authorized the land to be redeemed, only when all the taxes and damages were paid. The whole tract had been forfeited, and an undivided part of it could not under the statute be redeemed. But the plaintiff in his petition for a writ of error says: " He is advised, that the tax-receipts are conclusive evidence that *all* the taxes and damages upon the land in the name of John Hoye and William Deakins

Syllabus 2.

had been paid to the date of the receipts." I confess that I scarcely comprehend this position, for one of the receipts given to the plaintiff, John Hoye, in express language says, that the $155.60 was received " on account of the redemption of his land returned by the sheriff of Harrison county for the non-payment of taxes thereon in the name of William Deakins, one fourth of a tract of twenty thousand acres." This whole tract had been taxed in the name of William Deakins and forfeited ed in his name. John Hoye then in 1831 owned one fourth thereof, and it seems quite obvious, that he paid on account of these taxes due, what he deemed his portion of them, one fourth, and not the whole of these taxes. He could under the law redeem this tract of land or any part of it only by paying the whole of these taxes and damages.

The third part of the instruction is, that " the proper inference from the facts aforesaid, and the certificate of the auditor of public accounts dated the 11th day of July, 1856, and the receipt of George W. Dixon dated the 12th day of November, 1831, is, that the land was in the year 1834 forfeited and vested in the president and directors of the literary fund." The inference to be drawn from one of these receipts of November 12, 1831, is as we have seen that three fourths of the taxes and damages on this tract of land, which had been returned delinquent, remained unpaid. The other facts referred to are the taxing of this land in the name of William Deakins, the patentee, for two years, the taxing of it in the name of William Dakon for seven years, and the taxing of one fourth of it in the name of John Hoye for three years, and the return of it as delinquent for each of these years. The legal inference, as we have seen, from it having been properly taxed in the name of William Deakins, the patentee, for two years, and its being returned delinquent for those years was, that the tax upon it for those years remained unpaid, and under the statute-laws, which we have referred to above, as we

1880
Special Term.
———
Smith, Trustee,
&c.,
v.
Tharp et al.

Syllabus 3.

have before stated, the legal inference is, "that the for- <span class="margin">1880 Special Term.</span> feiture of these lands so returned as delinquent became <span class="margin">Smith, Trustee, &c., v. Tharp et al.</span> complete on the 1st of October, 1834." See opinion of Allen, President, in *Usher's heirs* v. *Pride*, 15 Gratt. 199.

If therefore this instruction had ommitted the words, <span class="margin">Syllabus 4.</span> "and the certificate of the auditor of public accounts dated the 11th day of July, 1856," this part of the instruction would have been perfectly correct. But it is claimed by the plaintiff in error in his petition for a writ of error that the insertion of this rendered the instruction erroneous. The plaintiff's counsel in his petition says, that this certificate of the auditor did not establish the facts set out in it, but under the law it was only *prima facie* evidence of the facts and time of the return of the real estate as delinquent, see Code of Virginia of 1860, ch. 176, sec 5, p. 722, Code of West Virginia, ch. 130, sec. 5, p. 615; that the court could properly instruct the jury, what legal inferences were to be drawn from certain facts, if proved to their satisfaction, but ought not to instruct the jury as to any inference to be drawn, not from facts, but from evidence only, as this evidence might have been disbelieved by the jury. If the court had instructed the jury to draw this inference from this certificate alone, it would have erred, the objections urged thereto by the counsel for the plaintiff in error being entirely sound. But the court did not instruct the jury to draw this inference from this auditor's certificate alone, but from it and certain facts, if proved to their satisfaction; and we have seen, that these facts alone required of the jury to draw this inference. If these facts were established by the evidence to the satisfaction of the jury and justified the inference that this land was forfeited, they would in no manner have been aided by the facts stated in the auditor's certificate, even if the jury had by reason of this instruction regarded the auditor's certificate as conclusively establising the facts stated in it. This reference therefore by the court to this auditor's certificate could not

1880
Special Term.

Smith, Trustee,
&c.,
v.
Tharp et al.

possibly have prejudiced the plaintiff. It was erroneous in the court to refer to it as a part of the basis from which he directed the jury to draw the inference, that this land was forfeited, but this error could not have misled the jury to the prejudice of the plaintiff in error, and he can not therefore complain of it in this Court.

The last part of this instruction is: "That the payments aforesaid in the year 1831 by the said John Hoye would not afterwards have the effect to divest the title so vested and vest the same or any part thereof, in the said John Hoye." This is certainly somewhat confused. The court had instructed the jury, that if they believed certain facts, this land was forfeited in 1834 and vested in the State. He here tells them that certain payments made by John Hoye in 1831 *afterwards* would not divest this title, which had vested in the State in 1834. We presume the court meant that the payment made by John Hoye in 1838 would not have the effect of divesting the title of the State, which had vested in 1834, and we suppose that the jury so understood this instruction. If so understood, the instruction is correct. It appears from the certified evidence, that this tract of land had been omitted entirely from the commissioners' books for many years prior to 1838; and that it had not been taxed for those many years. The receipt given by the treasurer, Wm. F. Taylor, to John Hoye on March 14, 1838, was as follows:

"$100.80.      TREASURER'S OFFICE, March 14, 1838.

"Received of John Hoye and the heirs of Francis Deakins and William Deakins, $100.80, on account of the taxes and damages on twenty thousand acres of land in Lewis county, situate on the waters of the right hand fork of Hughes' river, from the years 1817 to 1837 inclusive, the same having been heretofore omitted, and being now certified by the commissioners of revenue according to law.

"WM. F. TAYLOR."

It is obvious that this payment was only of the taxes

and damages during the twenty years that this land had been omitted from the commissioners' books, and of course it could not divest the title of the State, which had been acquired on October 1, 1834, to this tract of land, not because of its omission from the commissioners' books, but because for years, when it was on the commissioners' books, it had been returned delinquent, and these delinquent taxes had never been paid. But if we take this instruction as it is written, and suppose that the jury understood.the payments made by John Hoye in it referred to the payments made by him in 1831, then they must have understood the instruction to mean that these payments made by him in 1831 would not prevent the title vesting in the State on October 1, 1834; and so understood, this latter part of the instruction is, we have seen, correct. I do not think, therefore, that the apparent confusion in the conclusion of this instruction could in any way, however interpreted by the jury, have misled them to the prejudice of the plaintiff, and he cannot, therefore, complain thereof in this Court.

I am, therefore, of the opinion that there is no error in the record, of which the plaintiff in error can complain in this Court: and that the judgment of the circuit court of Ritchie county, of March 22, 1859, must be affirmed, and that the defendants in error must recover of the plaintiff in error, George Smith, trustee of John Hoye, deceased, their costs expended in this Court and $30.00 damages.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.