# CHARLESTON

## MILLS *v.* HENRY OIL CO.

Submitted February 2, 1905. Decided February 21, 1905.

57    255
58    370
58    455

57    255
f61    83

57    255
66    307

1. TAXES—*Presumption of Payment from Lapse of Time.*

     No presumption of payment to the state of taxes on land returned delinquent arises merely from lapse of time. (p. 259.)

2. FORFEITED TITLES—*Requisites for Redemption—Color of Title—Actual Possession.*

     One cannot get the benefit of a forfeited title under the first class of persons specified in article 13, section 3, of the Constitution, who has not had actual continuous possession, under color or claim of title, for ten years, and also paid state taxes for some five years during his possession. Nor can he do so under the second class, he either having title which itself is forfeited or not having paid state taxes for five successive years, after 1865, or from the date of his grant, if issued since 1865. Nor can he do so under the third class, if he has not both actual and continuous possession under color of title for some five years in succession after 1865, and paid all state taxes for the period of such possession. (p. 259.)

3. Forfeited Titles---*Claims Under Grant.*

One claiming title under a grant of land forfeited for delinquency, issued before July 1st, 1850, cannot claim the benefit of a forfeited title under the second class of persons specified in article 13, section 3, Constitution, his grant being void.  (p. 260.)

4. Cloud on Title---*Bill to Remove---Strength of Title.*

A bill in equity to remove a cloud over title to land cannot be sustained, unless the plaintiff have both good title and actual possession.  The weakness of the adversary title will not sustain the bill.  (p. 261.)

5. Forfeited Titles.---*Res Judicata---Decree Not to be Attacked Collaterally.*

A decree under section 17, chapter 105, Code, fixing the amount for redemption of forfeited land and declaring the land redeemed and exonerated by payment of such amount actually made, is conclusive to release all title vested in the state by such forfeiture, though taxes of some years were not included, and it cannot be collaterally attacked for error.  (p. 261.)

Appeal from Circuit Court, Wetzel County.

Action by John Mills and the Kanawha Oil Company against the Henry Oil Company and others., Decree for plaintiffs, and defendants J. E. Bartlett and others appeal.

*Affirmed.*

Hall & Hall, for appellant.

W. T. Hubbard, T. P. Jacobs, B. T. Bowers and Frank V. Iams, for appellees.

Brannon, President:

The state of Virginia, 13th July, 1797, issued a patent or grant to Isaac Hilliard for nine thousand acres of land then in Ohio county, now in Wetzel county, part of which land by various conveyances came to the ownership of John Mills, and by him was leased to the Kanawha Oil Company for the production of petroleum oil and natural gas.  That company took possession in 1895 and began oil production.  This land was delinquent for taxes, we may say, for forty years from 1798.  On 21st June, 1838, a redemption of it was made by payment of the taxes from 1819 to 1837, inclusive.  It does not appear that taxes prior to 1819 were paid.  In 1898 the State of West Virginia brought suit under chapter 105 of the Code against this Hilliard land to sell it for omission and a sale to the State for some taxes occurring later in the course

of time, and John Mills appeared therein by petition asking leave to redeem the land from forfeiture, and the court made a decree by which it ascertained and fixed the amount of money which Mills must pay to have a redemption of his land, and gave him leave to redeem on payment, and on the 21st day of January, 1898, Mills paid $5,627.02 under such decree, and the court entered a decree saying: "It is further adjudged, ordered and decreed that by the payment of the said money the said real estate is redeemed by petitioner John Mills, and that the same stand and be redeemed so far as the title thereto is in the state, and this decree shall operate as a release of all disclaimers heretofore made in the reference thereto, and of all forfeiture and sale of said real estate as set up in the bill of the plaintiff and of all taxes and interest charged and chargeable thereon." A title hostile to the said Hilliard title comes from a grant by the state of Virginia, 1st October, 1849, to Presley M. Martin described as containing one hundred acres, but containing in fact one hundred and twenty-seven acres. It came to the ownership of Cordelia E. Perdue and others. This Martin tract laps over on the Hilliard land to the extent of ninety-three acres. This lap or interlock of ninety-three acres is the land in controversy in this case. This Martin land was off the tax books from 1869 for many years, and therefore became forfeited to the State for omission. It was also sold to the State for taxes of 1877 and 1878. Actual possession under the Hilliard title dates back to 1869 and has been continuous since, such possession being not within the interlock. No possession was ever taken under the Martin title of the interlock, if even elsewhere on it. On the 23rd day of September, 1899, in a proceeding in the circuit court to subject the Martin land for forfeiture a redemption was made of the said ninety-three acres under the Martin grant. The Henry Oil Company holding a lease for oil and gas of the said ninety-three acres under the Martin title went upon the said ninety-three acres to build derricks and operate for oil, but they were forcibly resisted by the Kanawha Oil Company, which had before that taken possession of the Hilliard land outside the interlock and was operating for oil. The Kanawha Company then took possession of and drilled wells on the interlock. As thus the Henry Oil Company claimed a lease under the Mar-

tin title and Cordelia E. Perdue claimed the fee under it, John Mills and the Kanawha Oil Company brought this suit in equity against the Henry Oil Company, Cordelia Perdue and others setting up the Hilliard title as the superior title, setting up the Martin claim as bad and inferior, and asking that the Hilliard title be decreed to be the better title, and that the cloud over it arising from the Martin title be removed by decree, and that the Henry Oil Company be enjoined from operating for oil upon the said ninety-three acres and from interfering with and obstructing the rights of the plaintiffs under the Hilliard title. A temporary injunction was granted and a final decree was pronounced perpetuating said injunction as to all the land in controversy lying south-east of a line described on a plat filed in the cause, known as the Hilliard line, and declaring it to be the true line of the Hilliard survey of nine thousand acres, and decreeing that the Henry Oil Company, Cordelia E. Perdue and others with them claiming under the Martin grant should be perpetually enjoined from interfering with the possession of the plaintiffs of said ninety-three acres and their use and operation upon said land, and from conducting any operations thereon for the production of oil or gas, and declaring that John Mills had fee simple title to said ninety-three acres, and that the Kanawha Oil Company had a leasehold in it under its lease of the Hilliard land from John Mills. From this decree Cordelia E. Perdue and others have taken an appeal.

It is very clear that the Hilliard nine thousand acre tract became forfeited to Virginia for delinquency for taxes from 1798 down to 1831 under several acts, namely 13th December, 1792, 29th January, 1803, 20th January, 1807, 1st April, 1831. Hutchison Land Titles, 4, 5, 29; 2 Rev. Code 1819, 525, 528; Smith v. Tharp, 17 W. Va. 221; Holley River Coal Company v. Howell, 36 Id. 489. Money was paid, as for redemption, 21st June, 1838; but the taxes paid were, as the document shows, for only certain years, that is, 1819 to 1837 inclusive. That left the taxes of prior years unpaid. As the act of the officer making the computation is only ministerial I do not suppose that as it affirmatively appears that taxes for many years were not paid that this redemption is effectual. To meet this point we are told that as to the taxes for years from 1819 back to 1798 we must entertain a presump-

tion of payment from long lapse of time; that as it appears that some taxes were paid we are to presume that prior taxes had been paid and that the presumption of payment would arise from long time in connection with the fact of payment for certain years; but we do not think the proposition tenable.

In *State* v. *Jackson*, 56 W. Va. 558, (49 S. E. 465), we held that no presumption of payment of taxes comes from the mere duty of the citizen to pay taxes, and in *Smith* v. *Tharp*, 17 W. Va. 221, it is held that mere lapse of time will not raise a legal presumption of payment of taxes on lands returned delinquent, though in connection with other circumstances it might justify the jury in finding that the taxes had been paid. There are some authorities to sustain the presumption of payment of taxes after twenty years, 18 Am. St. R. 884, but the current is the other way. 27 Am. & Eng. Ency. L. (2 Ed.) 753; Black on Tax Titles, section 159. So, we cannot say that there was an effectual redemption in 1838 in the face of various statutes requiring for redemption payment of all taxes.

Relying on such forfeiture of the Hilliard land those claiming under the Martin grant say that the Martin grant got the Hilliard title under the Constitution, article 13, section 3, providing that, under circumstances there given, lands forfeited under one title pass and enure to the benefit of another title. This cannot be so, because the Martin title was itself forfeited both because it was purchased by the state and was omitted from the tax books. The Martin cannot thus take the Hilliard title under the class taking first under section 3, because, though the Martin grant was color of title, no possession of the interlock under the Martin title is proven, nor is it proven that State taxes were paid for five years during possession as required by the text of section 3.

One who seeks to get the benefit of a forfeited title under said section 3 must prove payment of State taxes. *State* v. *Jackson*, 56 W. Va. 558, (49 S. E. 465). So he must prove possession where that section requires him to do so. No possession or payment of taxes under the Martin grant was proven to enable it to take the title under the first class specified in section 3. The possession under the Hilliard title from 1869 up, though not within the interlock, extended by

law over the interlock, there being no possession within it under the Martin title, because possession of part is possession of the whole, the Hilliard being older. Thus possession of that interlock, instead of being in the Martin claimants, was in the claimants under the Hilliard title. The Martin title had no possession to give it the Hilliard title under class one, section 3. *Illsley* v. *Wilson*, 42 W. Va. 757; *Garrett* v. *Ramsey*, 26 *Id.* 345. The Martin could not get the Hilliard title under class 2 of section 3, because to take under that class there must be a grant which is not itself forfeited, and which but for the senior grant would be good, and there must be payment of state taxes for five years after 1865.

There was no proof of payment of taxes for such five years under the Martin title. But there is proof of non-payment. That is enough to repel any claim under the second class. If it paid taxes before '65 that is immaterial, as that would not give it the Hilliard title, because it did not pay five years taxes after 1865. For want of payment of taxes alone it cannot claim under the second class of section 3. But in my judgment there is another reason why under the second class specified in section 3, article 13 of the Constitution, the Martin title could not take unto itself the Hilliard title, and that is, that in 1849 land forfeited for delinquency could not be patented, and the patent therefor was no grant at all, simply void. *Atkins* v. *Lewis*, 14 Grat. 30; *Le Vassar* v. *Washburn*, 11 *Id.* 572. To come in the second class under section 3 the junior must be such as would be good but for the senior, say: but this Martin grant would be worthless and void even if the Hilliard grant had never existed.

The Martin grant cannot get the Hilliard title under class 3 of section 3, because it requires actual continuous possession for five years after 1865 and payment of state taxes for the same period. The Martin title cannot comply with either of those requirements. And thus we hold that the Martin title has no pretense to say, that even if the Hilliard be forfeited, the Hilliard title went to the Martin title. And thus the two contesting titles, as between themselves, stand on their own footings independent of forfeiture; and the Hilliard title is the older and better title.

But what has been said does not yet end the case. If the Hilliard title was not redeemed, then it was vested in the

state, and it being settled law that a bill to remove cloud cannot be sustained, unless the plaintiff has both good title and actual possession and cannot rely on the weakness of the adversary title, the Hilliard title bears the burden of showing that title does not longer outstand in the state *Helden* v. *Helden*, 45 Am. St. R. 371; *Hitchcox* v. *Morrison*, 47 W. Va. 206.

This being an ejectment in equity, the Hilliard claimants cannot rely upon the weakness of the Martin title, but must show the Hilliard to be good. Then can those who file this bill say that the forfeiture of the Hilliard under those old acts, which forfeiture became complete 1st October, 1834, get rid of the forfeiture and show that the state title had come back to them? We think they have shown this. The redemption on 21st January, 1898, so operates. The Code, chapter 105, section 17, provides that when a person asks to be allowed to make redemption the court shall fix the amount necessary to effect redemption. That amount should cover all dues to the state. The record does not show what taxes—how far back—were computed in this redemption; but we are justified in presuming it covered all. The Code further provides that upon payment the court shall enter a decree declaring the redemption of the land and that such "decree shall operate as a release of such forfeiture to the extent declared therein, and of all former taxes and interest charged and chargeable thereon." Now, this is the judicial ascertainment of the amount required by law to make redemption of the land. It is not like the mere receipt of money by the Virginia auditor, a ministerial act, but it is judicial action fixing the amount, declaring exoneration from forfeiture and releasing the state's title, and consequently a reinvestment in the former owner of his title and a release from all former taxes. Thus, those old delinquent taxes prior to 1819 were released. There was no forfeiture after '31. And as judicial action it cannot be collaterally attacked for error in amount or otherwise, as held under principles stated in *State* v. *Jackson*, 56 W. Va. 558, (49 S. E. 465). It is suggested that such virtue should not be accorded that decree, because it is a consent one, and the court fixed the amount on consent. The decree says: "It being agreed by and between the commissioner of school lands and John Mills, and the

court with their consent now ascertaining that the delinquent taxes due and unpaid    *    *    *    together with interest at twelve per centum 'per annum now amounts to $5,-000.00    '    *    *    *    it is therefore adjudged, ordered and decreed that the petitioner pay $5,000.00 to the commissioner of school lands, which the court doth adjudge, order and decree is the sum necessary and required to redeem said real estate from said forfeiture and sale, and which includes all taxes charged and chargeable thereon." Why is this not a judicial ascertainment by the court of the amount required for redemption? The commissioner represented the State. What if the parties did agree? It is useless even to mention the redemption of the Martin land. It was after the redemption of the Hilliard. That title had already revested in its owner. The Martin being a bad title could not be redeemed. *State* v. *Jackson*, cited. But we cannot collaterally attack the decree of redemption, unless we say it had nothing to act upon and was void, and cite *Twiggs* v. *Chevallie*, 4 W. Va. 468. I do not do so. But concede that the decree is not void; it can work no effect. So, we hold that Mills and the Kanawha Oil Company under him hold the superior title.

The circuit court fixed a certain line as the true line of the Hilliard patent over which the Martin lapped. It was fixed by reference to a plat filed in the case as an exhibit used in the federal court in a suit between Ewart and Muench, Ewart then being holder of the Hilliard title, which suit involved the location of the Hilliard land. Complaint was made that the court fixed that line for the Hilliard land, and fixed it by that plat. It seems plain to me, that it was the office of a proper decree to fix a line of demarcation between these lands in the interest of certainty, to avoid vagueness and litigation. Surely where two grants thus conflict and the court is fixing their relative rights, it is proper to establish a certain line. And why should it not do so by means of a plat? True, that plat is not binding on the parties, but it relates to the land, and the question is only whether the court fixed a wrong line, no matter by what it fixed it. We cannot say that it adopted a wrong line.

These views lead us to the affirmance of the decree.

*Affirmed.*