Anderson, J.
delivered the opinion of the court.
The plaintiffs in error claim to hold the laud in controversy by two grants of the commonwealth to their ancestor, Nicholas Cline. One for 400 acres, bearing -date March 28,1799, which is founded upon a settlement sight, running back to 1771 and confirmed on the 6th ■ day of September 1782, by a certificate of the commissioners for the district-of Montgomery and Washington, and surveyed April 30th, 1783. The other patent is for 414 acres, bears date February 6, 1828, and is founded upon a survey made the 8th day of December 1774, by virtue of an order of council granted to the Loyal Company to take up and survey 800,000 acres of land, which was established and confirmed by a decree of the Court of Appeals on the 2d day of May 1783. The boundaries of these patents are not Coincident, yet the large body of ihé land covered-bv both is identical.
' hachólas Cline seems to have been one of those hardy *390 adventurers who «settled this country when it was a wilderness frontier, before whose advances the roving occupation of hostile savages receded, and gave place to the introduction of a Christian civilization. He settled upon, the lands for which he afterwards obtained patents as aforesaid, at least as early as 1771, and lived upon them, cultivating and improving them until his death. They theu descended to his heirs, who, or some of whom, have held them in possession ever since.
In 1796, one Michael Watters, or Walters, under whom the defendant in error claims the land in controversy, obtained a commonwealth’s grant for eighty-seven acres of land, which is founded upon a survey made by virtue of a land office treasury warrant on the-8th day of October 1794. In describing the boundaries of the land, his patent calls for a corner of ET. Cline’s-land, two white oaks, and thence running with his line. It appears from the survey made in this cause that the corner, two white oaks, called for is a corner of Ciine’ssurvey and patent of 414 acres, and that the line run from that corner is nearly coincident with the line of Cline’s said survey, but does not at all correspond with the line of Cline’s 400 acre survey, but cuts off from it a lot of land, which comprehends nearly all the land in controversy, which is described by the survey in the cause-as containing thirty-two and a half acres.
At the date of Walters’ patent, Cline had a clear, equitable right to the land in controversy, and could doubtless have prevented the issuing of a grant to Walters for it if he had filed a caveat. Having failed to do so, the legal title became vested in Walters by the commonwealth’s grant, unless the equitable right of Cliné was of such a character as exempted his land from a location and grant under a laud office treasury warrant, as waste and unappropriated lands. But in French v. Loyal Company, 5 Leigh, 627, this court held that such-rights were upon no higher footing than rights acquired *391 by entry arid survey under a land office treasury warrant, and that in both cases, until patented, the lands were waste and unappropriated, and liable to location by others. Cabell, J. says that the same policy applied to both classes of claims, and both should be subject to the same law, making the'lands liable in both cases to subsequent location. “This liability, while it advanced the public interest, would do no injury to the diligent prior claimant, for his right might be always secured by a resort to the court of caveat—tribunals wisely provided for the adjustment of conflicting claims to land before the emanation of grants.” Cline, then, not having resoried to his caveat, the legal title became vested in Walters by the emanation of the commonwealth’s grant. And even a court of chaneei’y could give him no relief against the patent,.unless he had been prevented front filing a caveat by fraud, accident or mistake, or unless Walters, who got the first patent, had been guilty of actual fraud. “And he is guilty of actual fraud who* knowing another’s prior equity, proceeds to get a grant for the land.” Supra, p. 648, and McClung v. Hughes, 5 Rand. 453.
There is nothing in the record to show that Walters, in making the location and getting a patent, had been guilty of any fraud. On the contrary, it is inferable from the calls of the patent that he did not intend to invade the rights of Cline, as he calls for his corner and runs with bis line; which is the corner and line of Cline’s-survey of 414 acres, and which, we think, is the true bonudary of Walters’ patent. It does not appear that he knew of Cline having any other survey. But from what does appear, it is fair to presume that he was entii'ely ignorant of Cline’s survey of 400 acres.
The legal title being vested in Walters to the land in controversy, by the elder patent, the defendants in the court below relied upon an adversary possession in *392 themselves and-their ancestor, Nathaniel Cline, to defeat the better title.
It is a well settled " principle that there'can be-no adversary possession against the commonwealth. But1 a junior patentee may show that he had' possession of the land in-controversy prior to the emanation of his patent; under a claim of title, legal■ or-equitable, good or bad; and also, in order to explain the character of his possession anterior to the emanation of the elder patent. But bis -possession cannot-'be- adversary until ‘ the ■ emanation of-this elder patent, for ibis consistent with the rights of the commonwealth, in whom the legal title - resides. After the title passes from-the-commonwealth to the patentee it instanter -becomes- adverse to him. Shanks and others v. Lancaster, 5 Gratt. 110; Koinner v. Rankin’s heirs, 11 Gratt. 420.- But it must be an-actual and' exclusive possession. To be actual, the visible occupancy and improvement of a part of the land in controversy is an actual possession of' the whole to the limits of: the claim, under which it is held, and ousts or intercepts the legal seizin incident to the patent. Such possession of the junior patentee is exclusive, unless the eklér patentee enters and takes actual possession of'a part of! the land iu controversy. In that case the possession of the junior patentee will be restricted to his actual close.
It is now also well settled, that where there is an interference of the patents, so that they lap or interlock, the occupation or residence of the junior patentee upon a part of his tract outside of the interlock does not give him possession of that part of his tract which is embraced within the limits of the elder patent, but his possession is restricted by the boundary of the elder patent. But if he has an actual occupation and improvement of a part of the interlock, and the elder patentee has actual possession of no part of it, the actual possession ■ of’ the junior patentee is eo-extensive with-the- limits of his *393 patent, and is exclusive and adversary, and if continued uninterruptedly for the period of limitation, defeats the elder patentee’s right of entry, or his better title, as the case may be. Taylor's devisees v. Burnsides, 1 Gratt. 165 ; Overton’s heirs v. Davisson, Id. 211 ; French v. Loyal Company, 5 Leigh, 627; Koinnet v. Rankin's heirs, 11 Gratt. 420. These being the well established principles of law as applicable to this case, we are of opinion that the Circuit court did not err in refusing to give the first and second instructions prayed by the defendants, as set out in their fourth bill of exceptions.
The court is of opinion that there is no error in the refusal of the court to give the third instruction prayed for by the defendants, because in the case supposed the Walters right of entry would not have been tolled, and be could have had recourse to his writ or action of ejectment.
The fourth instruction, which was given, we think is correct. If the disseisee before making entry, die intestate, and his heirs make a conveyance of the premises, at a time when they are not in possession thereof, as the law theu was, their conveyance will pass nothing. But it is not every possession in another which will render a conveyance void. To have this effect it must be adverse. We think the instruction good without inserting the word “actual.” But the insertion of that word did not vitiate it or change its meaning.
We are of opinion also, that there is no error in the rulings of the court, to which the first and second bills •of exception apply. The first was not insisted on in argument: and as to the third, whilst reputation and tradition are admissible in evidence, upon questions of boundary, wm know of no case, where it has- been admitted to prove or disprove title ; and to allow it, we think, would be to violate well established principles of evidence.
The question raised, by defendant’s second bill of ex *394 ceptions, is one of greater difficulty. Did the deed of ^’je marshal pass the title, of the idiot heirs of Michael Walters, to Leonard Straw ? The conveyance was made by authority of, and in obedience to, a decree of the Superior court of Chancery, which was a court of general jurisdiction, and by statute had jurisdiction of the subject. But the sale was made to one whom the statute expressly declares, “shall not be admitted a purchaser, either by himself, or by another, or become the owner of the land, in any manner,” during the period of the disability of the heii’, or devisee. It is a plain error of the chancellor, and is apparent upon the decree, and the deed made in pursuance of it.
In Cox & al. v. Thomas' adm'x, 9 Gratt., 323, 326, Judge Allen says, “If the court has cognizance of the cause, advantage cannot be taken of an erroneous judgment collaterally; for although the error be apparent, the judgment remains in force until reversed.” And cites Drury's case, 8 Coke, 141 b, and Tarlton v. Fisher, Doug. R. 671. And again, in commenting on Prigg v. Adams, 2 Salk. R. 674, he says “the principle of that case is decisive of this. There, although the act of Parliament declared the judgment void, yet as a court of competent jurisdiction had rendered it, though the error appeared on its face, it could be corrected only in an appellate tribunal.” The same principle is affirmed in the case of Fisher v. Bassett, 9 Leigh, 119. Prom these decisions, and others which might be cited both in this court, and in the United States Supreme court, it would seem, that although the conveyance was made to one whom the statute forbids to be admitted a purchaser, and incapacitates to become the owner duringthe period of disability, it being authorized by the decree of a court of competent jurisdiction, the deed is not void, hut only voidable ; and is in force until set aside, by a reversal of the decree, by authority of which the conveyance was made. This cannot be done collaterally, but only in the same court *395 which pronounced the decree, hy review ; or in a proceeding before an appellate tribunal, to revise or reverse. We are, therefore, of opinion that there is no error in the ruling of the Circuit court on this point.
■ It now only remains to say, that for reasons already assigned, which need not be here repeated, we think the instructions given by the court to the jury, on the motion of the defendant in error, are substantially correct. Upon the whole, we are of opinion, to affirm the judgment of the District court.
Judgment affirmed.