Staples, J.
This is an action of ejectment brought in the circuit court of Floyd county. Other actions of a similar character were instituted by the same plaintiff against other defendants in the same court, involving substantially the same questions, and it was agreed the same judgment should be entered in all the cases. Upon the trial, the whole matter of law and fact was referred to the presiding judge, who was of opinion the plaintiff was entitled to recover, and rendered judgment accordingly.
Both parties claim title under a’common grantor. It appears that in the year 1830, John Belden, being the owner, or claiming to be the owner, of a large tract known as the Austin Nicholas survey, lying in the-’county of Montgomery, conveyed to William Wade, trustee, twenty-five thousand acres, part of said tract. Three years after-wards, in December, 1833, Belden conveyed "to Major Samuel Saunders, of Franklin county, twelve thousand acres, also part of the Austin Nicholas survey. The plaintiff claims under this latter deed. The defendants claim under John G. Cecil, whose title is derived from. Wade, trustee.
It is conceded that the Saunders’deed covers the land in controversy. It is not, however, conceded that the deeds under which the defendants claim also cover it. The operation and effect of these deeds have been discussed by counsel at great’jength, and they, therefore, require a somewhat extended notice in this opinion. (Here Judge Staples enters into a minute and careful considera. *31 tion of the deed from Belden to Wade, trustee, the deed from Wade to Glenn, from Glenn’s devisees to Cecil, and those claiming in common with him, and the various visions and descriptions contained in those deeds, and the parol and documentary evidence relating to the same. From all which he was satisfied, that, notwithstanding occasional errors in the description of boundaries, and the interests of parties, the land in controversy is embraced by the deeds of conveyance under which defendants claim.) Judge Staples then proceeds: The case presented is therefore simply one of an interlock, and the defendants having the elder title must succeed, unless their right is barred by the adversary possession on which the plaintiff relies. And this is the material question in the case.
In the first place, the evidence adduced to show possession of a part of the land in controversy by Major Saunders prior to 1842, is not at all satisfactory or reliable.
Indeed, it was not serionsly insisted on in the argument,, and may be thrown out of the case.
It appears, however, that in the year 1842, one Simpkins settled upon a small clearing of ten or twenty acres, a part of the land in dispute. Whether he claimed title, or was a mere squatter, is not very clear. Upon this point, the testimony is conflicting. One thing is very certain, he did not claim under Major Saunders. It seems that after remaining there awhile, he went to see Major Saunders; and it was agreed between them that Simpkins was to continue in possession, to have all he could make on the land, and in consideration of this, he was to salt and attend to the cattle which Major Saunders was in the habit of sending every spring to range his lands in Floyd county. This was the extent of the arrangement between them. The agreement was not reduced to writing, nor was anything said with respect to the time it was to last, although in fact it would seem to-have continued until Major Saunders’ death in 1851.. *32 About that time (1851), Cecil finding Simpkins in possession, and knowing nothing of his contract with Saunders, to give Simpkins a lease of the land, which was regularly reduced to writing at Simpkins’ request. And there is no doubt that thereafter Cecil regarded Simpkins as his tenant, and Simpkins recognized Cecil as his lessor and the owner of the land. Simpkins having thus succeeded in obtaining a lease from both parties, remained in possession until the year 1860, when he either voluntarily abandoned or was driven from the possession. The land in controversy contained about three thousand and five hundred acres, and, with the exception of the small clearing alluded to, was, at the time of these occurrences, an unbroken forest.
The theory of plaintiff’s counsel is, that Simpkins having accepted a lease from Saunders, his subsequent attornment to Cecil was null and void; that Simpkins, notwithstanding, continued Saunders’ tenant; his possession was Saunders’ possession, was adversary to Cecil, was co-extensive with the limits of the deed under which Saunders claimed, and was continued sufficiently long to ripen into a perfect title.
The general rule is certainly well settled, that a tenant ■cannot dispute the title of the person by whom he has been let into possession, nor can he be permitted to deny •that the possession so received was the possession of his landlord. In Emerich v. Tavener, 9 Gratt. 220, 224, Judge Lee said, “The rule is not varied where the tenant is in ■actual possession of the premises at the time he accepts a lease, for he thereby as effectually recognizes the title and .possession of the lessor as if he had entered and taken possession under and by virtue of the lease itself.” It may be a question whether this proposition of Judge Lee is •correct in the broad and unqualified terms in which he has expressed it. There is a strong line of authority for khe doctrine that, to create the estoppel as between land *33 lord and tenant, the tenant must enter into and obtain possession under the lease. 2 Smith Lead. Cases, 752; 1 Bing, on Real Prop. 211; Tyler on Ejectment, 822, Miller v. Williams, 15 Gratt. 213, 222.
In Alderson v. Miller, 15 Gratt. 279, 283, Judge Allen expressed the opinion that the estoppel did not apply where the tenant in possession had been induced by fraud and imposition to accept the lease. Other decisions have gone much further, holding that where the tenant, under a mistake, is induced to accept a lease from a person having no title, or if he be threatened with a suit upon a paramount title, the threat, under the circumstances, is equivalent to an eviction, and he may thereupon submit in good faith and attorn to the party holding a valid title to avoid litigation. Merryman v. Bourne, 9 Wall. U. S. R. 592, 600; 1 Wash on Real Property, 482, 492. It is not necessary, for the purposes of this case, to express any-opinion upon these points, nor is it necessary to decide how far they are effected by the provisions of our statute relating to attornments to strangers. Code of 1873, p. 969, § 4.
The question here does not turn upon the nature and character of Simpkins’ obligations to Saunders growing out of the lease. The real point of inquiry is, How.was Cecil affected by that lease ? As has been already said, he was wholly ignorant of its existence. He not only had no knowledge of it, but he had no means of acquiring such knowledge. It does not appear that Major Saunders made it known in the community. It is certain that but few persons in the neighborhood knew anything of it. Simpkins was careful to conceal the fact, for by doing so, he succeeded in obtaining the lease from Cecil.
It is but fair to presume that if Cecil had been informed that Simpkins was Saunders’ tenant, he would at once have taken the necessary steps to protect his own rights. It is hardly to be supposed he would have per *34 mitted Simpkins to remain there long enough to acquire title by possession. No one attributes bad faith to Major Saunders in the matter, but it was through his conduct that Simpkins was enabled to obtain a lease from Cecil and to retain the possession.. It would be curious, indeed, if a possesion thus continued, could be relied on to defeat the title of the party under whom it was held ostensibly, and without whose consent it could not have been so held. The ground upon which the junior claimant acquires title by adversary possession, is the supposed laches of the owner. The latter sees his boundaries invaded by an adverse claimant asserting title, and if he remains passive under such circumstances a sufficient length of time, he is held to acquiesce in the adverse claim. The principle, therefore, is, that the possession must be not only with claim of title, but it must be visible and notorious, and not secret and clandestine. Angelí on Limitation, § 392.
As was said by the supreme court of Massachusetts, the occupation must be of that Dature and notoriety that the owner may be presumed to know the adverse possession; otherwise he may be disseized without his knowledge. Angelí, § 394.
In Dawson v. Watkins, 2 Rob. R. 259-269, Judge Allen, delivering the opinion of the court, said: “To operate a disseisin of one having right, the entry should be made under a claim of title with the intention of taking possession, and be accompanied with such visible acts of ownership as from their nature indicate a notorious claim of property in the land. To hold otherwise, would be to establish a principle by which every proprietor of vacant lands might be disseized without his knowledge, or even the possibility of protecting himself. The same doctrine is laid down in Taylor’s devisees v. Burnsides, 1 Gratt. 165, 195; Koiner v. Rankin’s heirs, 11 Gratt. 420; Kincheloe v. Tracewells, Ibid. 587, 602; Ewing’s lessees. Burnet, 11 Peters R. 41.
*35 Tested by these principles, the plaintiff’s claim of possession is lacking in one of the most essential elements to render it adversary in its character. Simpkins, although in the actual occupation of the premises, did not claim title in himself or in Saunders. On the contrary, he accepted a lease from Cecil, and claimed to hold under him.
If Saunders ever claimed Simpkins as his tenant, or that Simpkins’ possession was his possession; if he exercised any such visible or notorious acts of ownership over the land as constituted adversary possession, the record does not show it. It does not matter whether Simpkins originally took possession claiming title or as a mere squatter. If in the latter character, it was in subordination to the title of Cecil, the true owner, and would never become adverse to the latter, except by an open notorious claim of title brought to the actual notice of Cecil. On the other hand, if Simpkins entered claiming title, his possession being without color, was confined to his mere enclosures; and so far as Cecil was concerned, the character of that possession could only be changed by an open adverse claim under Saunders. Simpkins haviug originally entered as owner, if such was the fact, Cecil had the right to suppose he continued to hold in that character until notice was brought to him of a change in his relations. A secret parol lease, such is here shown, would be wholly ineffectual for that purpose. Practically, its effects would be, not only to disseize the owner without his knowledge, but without the means of acquiring knowledge of Saunders’ claim. Sharp v. Kelly, 5 Denio. R. 436.
This court has repeatedly held that wild and uncultivated lands cannot be the subjects of adversary possession whilst they remain completely in a state of nature. A change in their condition to some extent is essential. Without such change, accomplished or in progress, there can be no occupation, use or enjoyment. Evidence short of this may prove an adversary claim, but in the nature of *36 things cannot establish an adversary possession; nor is there any reason for relaxing the rules of law on this subject in behalf of the adversary claimant of such property. There ought to be no presumption in his favor against the better title. As has been well said, “ the inexorable operation of these statutes (of limitations), disregarding, as they do, entirely the original merits of thg controversy, furnishes'a sufficient reason for excluding mere presumtions of the facts which they require, and for exacting clear and decisive proofs of their existence.” Judge Baldwin in Taylor’s devisees v. Burnsides, 1 Gratt. 165, 190, 198.
In the present case, the only improvement upon the land in controversy was the small clearing occupied by Simpkins. It has been ql ready seen that this occupation did not constitute an adversary possession in any just and legal acceptation of the term. The residue of the tract being wholly in a state of nature, covered by unbroken forests, could not be the subject of adversary possession. The mere fact that herds of cattle were driven upon it, and permitted to wander over its hills without restraint, scarcely, under the circumstances, amounted to a claim of •ownership. Other persons in the community owning cattle exercised the same privilege of salting and ranging without question. Major Saunders owned a large body of land adjoining the land in controversy, and a part of the same tract; and the public might conclude, as Cecil might justly.conclude, that the cattle properly belonged and were intended to be “ranged” upon lands belonging to Major Saunders, and not upon that in controversy to which he had no title.
It will thus be seen that the claim of the plaintiff, bought by him at a sale in bankruptcy for a mere nominal consideration, rests not upon any title to the premises, for the person under whom he claims had none, but upon the ■occupation of .a small blearing of ten or twenty acres by a *37 person, the nature and character of whose tenancy was perhaps never understood until years afterwards, and who was enabled to continue his occupation by a fraud the real owner, perpetrated through the negligence of the adverse claimant. In this way it is sought to recover a tract or tracts of more than three thousand acres of land, some of it of considerable value, against bona fide purchasers, who have paid valuable consideration and expended money in clearing and improving the property.
Therefore, without now inquiring whether Simpkins was estopped to controvert Saunders’ title or to show that Cecil was th<¡í true owner, my opinion is that Saunders and these claiming under him cannot rely upon any possession by Simpkins as adversary to Cecil. This view places the parties in their original position—precluding either from claiming any advantage on the score of possession, and leaving their rights to be adjudicated according to the merits of their respective titles. It follows that, Cecil having the better title, judgment ought to have been entered in behalf of the defendants.
This view renders it unnecessary to decide a question discussed by counsel, which, in another aspect of the case, would have been very material. And that is conceding that Samuel Saunders had actual adversary possession of a part of the interlock, whether that possession was coextensive with the bounds of his deed, or was confined to his mere enclosure—the senior grantee, Cecil, having settled on his tract, but outside of the interlock. The learned judge of the circuit court decided that in such ease the possession of the junior grantee extends to the boundaries of his deed, for if he had not so held, he could not have decided that the plaintiff was entitled to all the land in controversy. It seems that this ruling was based upon the case of “ Cline’s heirs v. Catron,” reported in 22 Gratt. 378. It must be admitted there is an expression of the learned judge, delivering the opinion in that case, giving countenance to the ruling of the circuit judge.
*38 I did not sit in the case of “Cline’s heirs v. Catron,” having been counsel in the lower court. But I am confident this question did not arise either upon the evidence or upon any of the instructions propounded on either side.
It is obvious that J udge Anderson did not intend to lay down any such doctrine as the reported opinion would seem to indicate. What I take it he intended to say was, that when the junior grantee has actual possession of a part of the interlock, and the senior grantee has actual possession of no part of his tract, then the possession of the junior grantee is not confined to his pedis positio, but is co-extensive with the boundaries called for in his grant. A proposition of law, sound in itself, and sustained by the authorities. It is, however, a very different matter, where, as in this case, the senior grantee was in possession of a part of the land within the limits of his grant, although outside of the interlock. The question involved in this latter proposition was discussed by Judge Baldwin in Taylor’s devisees v. Burnside, 1 Gratt. 165, 196, 224; and again alluded to in Overton’s heirs v. Davidson, 1 Gratt. 211, 224; but the judges being divided in opinion, it was not decided. It was also mentioned by Judge Lee in Kíncheloe v. Tracewells, 11 Gratt. 587, 603, and again left undecided. So that it is still an open question in Virginia. As a decision of the point is not required in the case before us, it is better it shall so remain until a thorough discussion can be had before a full bench. What is now said is only said for the purpose of removing an erroneous impression, which has gone abroad with respect to what was actually decided in Cline’s heirs v. Catron.
For the reasons already stated, the judgment of the circuit court must be reversed, and judgment entered for the defendants.