## TREMAINE V. WEATHERBY ET AL.

58  615
97  265

58  615
126   5

58. 615
131  634

1. **Evidence**: REAL PROPERTY: OWNERSHIP: POSSESSION. It was competent for a witness to state that he thought he was the owner of the lands in controversy, and was in possession thereof at a certain time, although this was the statement of a conclusion of fact, where he proceeded to state the acts which he did in the way of possession; and if objectionable, it was without predjudice.

2. **Possession**: LANDS: GOVERNMENT SUB-DIVISIONS. Where one takes possession of a government subdivision of land under a claim of title to the whole of it, and puts a portion of it in cultivation, and no other person is in possession of any part thereof, such possession must be regarded as applying to the whole tract claimed by him, especially when the actual possession extends to each government subdivision embraced in the entire tract.

3. ———: ———: STATUTE OF LIMITATIONS: PRACTICE IN THE SUPREME COURT. Evidence, that a party "went east" and resided there several years, is not sufficient to establish that by going "east" he went out of the State so that the statute of limitations ceased to run in his favor. This court will not presume a state of facts upon which to base the reversal of a cause.

4. ———: ———: ———: COLOR OF TITLE. To constitute color of title it is not necessary that the title under which a party claims should be a valid one; and where a party pre-empted the land, paid for it, claimed to own it by virtue of a swamp land deed from the county, and paid taxes

on it, this was sufficient claim of right, or color of title, to enable him to interpose the statute of limitations.

5. ———: COLOR OF TITLE: TITLE IN THE UNITED STATES: STATUTE OF LIMITATIONS. A party entered into possession of a tract of land under color of title, and so remained in possession thereof for more than ten years after the title to the tract had been conveyed to a railroad company by the United States. *Held*, that to enable him to invoke the protection of the statute of limitations, it was wholly immaterial whether his title originated before or after the title passed from the United States.

*Appeal from Harrison Circuit Court.*

SATURDAY, JUNE 10.

THIS is an action at law by which it is sought to recover damages for the alleged breach of the covenants in a deed of general warranty for certain real estate. There was a trial by jury and verdict, and judgment for the defendants. Plaintiff appeals.

*L. R. Bolter* and *Smith & Clyde*, for appellant.

*Bailey & Carlisle* and *Sapp & Lyman*, for appellees.

ROTHROCK, J.—The land embraced in the deed upon which it is sought to recover damages is part of the west half of the N. W. $\frac{1}{4}$ of sec., 7, township 78, range 43 west. The Boyer river runs through the government subdivision above described, and the tract which was conveyed to the plaintiff was that part which lies south and east of the river, and contains thirty acres or less. The whole tract is fractional and instead of containing 80 acres it embraces but about 52 acres. It appears that the defendant was the holder of a certificate of pre-emption for the land, which was dated December 15, 1855, and that he made payment therefor at the rate of $1.25 per acre to Harrison county, and that on the 12th. of September, 1858 the county made a quit claim deed of the land to the defendant in which it was recited that it was swamp land. This deed was placed on record on the 19th.

day of January, 1859. Within a year or two after he received the deed, the defendant entered upon that part of the tract which lies north of the river, and broke up the sod and put it in cultivation, and the same has been in cultivation continuously from that time to the present, with the exception of one or two years. This part of the tract is fenced in common with some other lands on the same side of the stream. There is no fence along the stream, because the bank of the stream answers the purpose of a fence. The only actual possession which defendant had at any time of that part in controversy consisted of an occasional load of wood, which he cut and hauled therefrom, there being a fringe of timber along the river. Indeed, we suppose from the evidence that the prairie on that side of the stream was too low to be suitable for cultivation.

In 1862 the whole tract was conveyed to the Mississippi and Missouri River Railroad Company, by the Commissioner of the General Land Office, as enuring to that company under the Act of Congress of May 15, 1856, and it appears to be conceded by the record before us that the railroad company thereby acquired title to the land superior to any claim of the defendant.

The conveyance was made by the defendant to the plaintiff in January, 1878, and he defends the plaintiff's claim for damages upon the ground that he was in the actual, open, notorious, continuous and adverse possession of the land, under color of title and claim of right, for more than ten years prior to the conveyance to the plaintiff. It was upon this issue that the case was tried in the court below.

The plaintiff has assigned several errors based upon the ruling of the court as to the admission of evidence. The defend-

1. EVIDENCE: real property: ownership: possession.

ant was permitted to state as a witness that he was the owner of the land about January 31, 1878, and that he was in possession at that time, and that no other person at any time claimed to have any right to the property. We think the ruling of the court as to this

evidence was not erroneous, if for no other reason than that it was competent for the defendant to show that he believed himself to be the owner and acted in good faith in asserting such ownership. The statement of the witness that he was in possession of the land is the statement of a fact, or rather a conclusion of fact, and even if it be objectionable as stating a conclusion, it was without prejudice, for the witness immediately proceeded to state the acts which he did in the way of possession, and there is no real conflict in the evidence as to what these acts were. It is not pretended that the possession was not actual as to the part of the land which is situated north of the river, and the acts tending to show the possession as to that part south which was sold to the plaintiff are not in dispute.

II. We come now to what we regard as the material question in the case. As has been observed the land which the defendant pre-empted and purchased from the county

2. POSSESSION : lands: government subdivision.

was divided by the Boyer river. This stream was not a meandered one, that is, the government surveys are made regardless of the stream, and the owners of land on both sides have the same title to the bed of the stream that they have to the land upon either side of it. The question is made by appellant in objections to the evidence, and in instructions asked, and in exceptions to instructions given to the jury, and it is contended in argument that the possession of the land upon the north side of the stream was no possesion of that part lying upon the south side. It is in effect claimed that by reason of the stream the two parts of the tract became separate tracts, and in order for the defendant to maintain his defense of the statute of limitations to that part south of the stream, it was necessary that he should have been in actual possession thereof. This we think is not a fair nor reasonable view of the rights of a party who asserts title by adverse possession based on color of title or claim of right. It is not practicable nor possible for a party to be in actual possession of every part of a tract of land which is

cut up by streams or sloughs, by bluffs or the like. He cannot have the whole of such a tract in the grasp of his hands or under his feet. If the owner of eighty acres of land breaks and cultivates sixty acres and up to a slough leaving twenty acres unbroken and unused, it would be unfair to say that his possession of the twenty acres was not actual and adverse, because it is cut off from the other land by a stream, a bluff, a thicket, or a slough. In this case it is not claimed that the river run upon the line of the government subdivision between the two fractional forties which composed the whole tract. On the other hand the land was conveyed by metes and bounds which show that such was not the fact.

We think, that where one takes possession of a government subdivision of land under a claim of title to the whole of it, and breaks up the sod and puts part of it under cultivation, and no other person is in possession of any part, the possession must be held as applying to the whole tract claimed by him, especially when, as in the case at bar, the actual possession extends to every government subdivision within that embraced in the whole tract.

III. It appears from the evidence that during the time the defendant was in possession of the land he "went east"

3. ——: ——: with his family and remained some nine or ten
statute of
limitations. years, and that during his absence the land was farmed by tenants under the direction of an agent, whom the defendant left to lease and attend to his property.

It is contended by counsel for appellant that the statute of limitations ceased to run during the defendant's absence from the State. This position is probably correct under the rule announced in *Heaton v. Fryberger*, 38 Iowa, 185. But counsel for the appelles contend that there is no evidence that defendant was at any time out of the State. It is true it is many times stated by the defendant, and by other witnesses that he "went east," but, where he went to, whether in the eastern part of this State, or into one of the states east of this does not appear. If he was within this State the statute

did not cease to run and operate in his favor.   We cannot presume a state of facts upon which to base a reversal of a case. We are required to make every reasonable presumption in favor of the correctness of the action of the court below.  We are the more ready to so hold in this case because it is very doubtful from an examination of the record whether this question was distinctly raised in the court below.   It is true objection was made to the evidence of the defendant's agent, and to that of the defendant, as to the renting the improved land while defendant was east, upon the ground that the evidence was incompetent and irrelevant, but this objection was urged all the way through because the land leased out did not embrace that part conveyed to plaintiff.   No mention is made of any alleged interruption to the operation of the statute in any instruction of the court to the jury nor in any instruction asked, nor in the motion for a new trial.

IV.   It is urged that the defendant cannot successfully interpose the statute of limitations, because the deed under
4. ——: ——: which he holds is a mere quit claim and not ad-
——: color
of title.     missible to show color of title.   The cases of
*Watson v. Phelps*, 40 Iowa, 482; *Springer v. Bartle*, 46 Id., 688 and several other cases in this court are cited as authority for the rule contended for.   Those cases are not applicable to the question presented here.   They hold that the grantee of a quit claim deed is not to be regarded as a good faith purchaser without notice of outstanding equities.   The question as to what constitutes color of title to support the statute of limitations is very different.   To constitute color of title, it is not requisite that the title under which the party claims should be a valid one, and its want of validity may result from its original inherent defects.   *Hamilton v. Wright*, 30 Iowa, 480.   In *Colvin v. McCune*, 39 Id., 502, it was held, that a tax deed void on its face would afford color of title so that the statute would operate as a bar.   See also *Douglass v. Tullock*, 34 Id., 262, and *Close v. Samm*, 27 Id., 509.   The defendant also claims that he held under claim of right, and

Tremaine v. Weatherby.

testifies that he pre-empted the land, paid the county for it, claimed that he owned it, and paid all taxes on it, until he sold to the plaintiff. This was surely sufficient to make the color of title or claim of right required to support the statute. In Washburn on real property, Vol. 3, p. 156, it is said "a quit claim deed, from one claiming under a tax deed, though insufficient to pass a good title, gives to one in possession under it, color of title."

V. The land was certified to the railroad company after the defendant took possession under his deed from the county. It is urged that as the statute of limitations did not commence to run while the title was in the United State the defendant cannot invoke the aid of the statute until there was some distinct assertion or renewal of his claim to the ownership supported by actual possession. An instruction to the jury to this effect was asked by the plaintiff and refused. Such an instruction was not applicable to the facts of the case. The evidence shows beyond dispute that the defendant was in the actual possession of the land during all the time after he broke it up. He caused it to be cultivated every year excepting one or two wet seasons. Like an army of occupation his flag was constantly unfurled. Each day and each year as he entered upon the land to plow, sow, cultivate and reap there was a distinct assertion of his claim of right to the land. When the railroad company acquired the title, this open and actual possession was held by the plaintiff, and it continued for more than ten years after that and before the conveyance to the plaintiff. Nothing more than this was necessary, and under these circumstances we think it was wholly immaterial whether the defendant's claim of right or color of title originated before or after the railroad company acquired title.

In the foregoing discussion, we think we have in substance at least noticed all of the objections urged by counsel for appellant in their argument, and reach the conclusion that the judgment of the Circuit Court should be

AFFIRMED.