# CHARLESTON.

## ILSLEY v. WILSON.

Submitted September 16, 1895—Decided December 12, 1896.

1. BREACH OF GENERAL WARRANTY—ADVERSE POSSESSION—STATUTE OF LIMITATIONS.

In an action of covenant for breach of warranty, if it appears that a portion of the land conveyed with covenants of general warranty was in the adverse possession of a stranger at the date of the conveyance, and held by a paramount title, the grantee in such deed will be *held* to be evicted on the day of the execution of said deed, and the statute of limitations will commence to run against the action from that date, and will be barred in ten years thereafter.

2. ADVERSE POSSESSION—POSSESSION OF SENIOR PATENTEE—POSSESSION OF JUNIOR PATENTEE.

Where a party holds a large tract of land under patent from the state, which tract is divided by a line of narrow surveys running across it, held by junior patentees, who have acquired good title to said narrow surveys, and the holder of the senior patent takes possession of the land within the bounds of his patent on the east side of said line of narrow surveys, such possession will not be limited by the boundaries of said narrow surveys, but will extend to the exterior bounds of his patent on the west side of said narrow surveys.

3. INTERLOCK—POSSESSION OF SENIOR PATENTEE—POSSESSION OF JUNIOR PATENTEE.

Where there is an interlock between the land held under said elder patent and a junior patent, and the junior patentee is in possession under his patent, but outside of the interlock, and the senior patentee is in possession, by actual improvement, of any portion of his land under said senior patent, the junior patentee will be limited by the boundaries of the elder patent.

4. VERDICT—EVIDENCE—REVIEW.

Where a motion is made in the circuit court to set aside a verdict on the ground that the same is contrary to the evidence, and the court fails to certify all the evidence offered or all the facts proved, this Court can not review or reverse the judgment for that cause.

VINSON & THOMPSON and J. S. CLARK for plaintiff in error, cited 3 Gilman (Ill.) 162, 180; 58 Pa. 480; 13 S. E. (Va.) 414; 3 Dev. 200; 54 Miss. 450, 454; Raw. Cov. §§ 140, 226, 232; 17 Ill. 190; 79 Va. 313; 22 W. Va. 373; 24 W. Va. 119, 238; Code, c. 90, s. 19; 1 Gratt. 165, 196, 211; 26 W. Va. 345, 358-61, 372; 11 Gratt. 420; 22 Gratt. 378, 392; 1 Am. & Eng. Enc. Law, p. 262; 69 Miss. 469; Code, c. 131, s. 5; 35 W. Va. 492, 500, 588, 666; 31 W. Va. 663; 34 W. Va. 155; 1 Smith's L. C. (8th Ed.) 200; 8 Gratt. 353, 399, 404; Const. Art. XIII, s. 3; 54 Ill. 489; 98 U. S. 56; Code, c. 99, s. 14; 15 Gratt. 83, 98; 25 Minn. 498; 3 Ohio, 216; 4 Rand. 266; 5 Gratt. 1; 14 Gratt. 42; 13 W. Va. 718; 16 W. Va. 717; Code, c. 71, ss. 2, 5, 14; Code 1849, c. 116, s. 4; 7 W. Va. 232; 26 Mo. 92, 99; Code, c. 72, s. 12; 21 Gratt. 96, 99; 24 Gratt. 42; 13 Ired. L. (N. C.) 194; 26 W. Va. 356.

CAMPBELL & HOLT for defendant in error.

I.—*Action on a motion for a new trial on the ground that the*

*verdict is contrary to the evidence can not be reviewed unless the bill of exceptions certifies all the facts proven or all the evidence introduced.*—34 W. Va. 244; 35 W. Va. 52; 10 W. Va. 106; 3 W. Va. 386.

II.—*Actual possession of a part of one of any number of coterminus tracts, large or small, is actual possession of every part of each of such tracts not in the actual adverse possession of some one else.*—26 W. Va. 345, and cases cited.

III.—*Actual and adverse possession under a paramount title constitutes a breach eo instanti of a warranty in a deed by a person holding an inferior title.*—22 W. Va. 373; 24 W. Va. 119; Vol. I, Part 1, Smith's Leading Cases, p. 193 *et seq.;* 45 N. Y. App. 499; Rawle, Cov. Tit. §§ 139, 140, and cases cited.

IV.—*Reservation in grants.*—*Burden of proof.*—39 W. Va. 432.

ENGLISH, JUDGE:

This was an action of covenant, brought by Edward Illsley against A. W. Wilson, in the Circuit Court of Wayne county, to November rules, 1891. On the 28th day of January, 1892, the defendant demurred to the plaintiff's declaration, and, by consent of parties by their attorneys, the cause was removed to the circuit court of Cabell county, and was placed on the docket of the circuit court of that county on the 22d day of August, 1892. On the 21st day of September, 1892, the defendant appeared and pleaded covenants not broken; covenants performed, and a special plea in writing, relying on the statute of limitations, which last-named plea was excepted to, but the exception was overruled by the court, and the plaintiff replied generally to said plea, and issue was taken upon the other pleas. An order of survey was directed, and the demurrer to the plaintiff's declaration was overruled. On the 11th day of December, 1893, the case was submitted to a jury. A large amount of documentary evidence was read in evidence to them, and the testimony of numerous witnesses was heard by them.

During the trial the plaintiff moved the court to give to the jury ten instructions, to the giving of which the de-

fendant objected, and the court sustained said objection to instructions Nos. 2, 3, 4, 5, 9, and 10, and gave the others, to which action of the court in sustaining said objection of the defendant the plaintiff, by his counsel, excepted.

The instructions asked for by the plaintiff read as follows: "(1) The court instructs the jury that, if they believe that there is an interlock between the six thousand three hundred acres and the Sam Smith patent, then the title of the trustees of the Guyandotte Association to that interlock is better than, and paramount to, the title of the plaintiff. (2) The court instructs the jury that if they find from the evidence that, under the better and paramount title—*i. e.* the Smith title—no actual possession of any part thereof west of the left fork of Twelve Pole had ever been taken; and that, beginning with the north line of said survey, there was a contiguous series of farms and junior grants, extending to the south line of said Smith survey, held in actual possession and adversely to the Smith title, although there was actual possession of the Smith lands east of said series of junior grants, and this was not such a possession of the interlock in controversy so as to work an eviction of the plaintiff; and if you further find that the land embraced in the Smith patent, which lies west of tne left fork of Twelve Pole, and which embraces the six thousand, three hundred acres and the interlock in controversy, was first reduced to actual possession under the better title in the fall of 1890 or the winter of 1891—then you should find for the plaintiff. (3) The court instructs the jury that possession of thirty three thousand acres is not in law, or in fact, possession of the one hundred and twenty thousand acre tract, an adjoining tract, or any part thereof, where the party sought to be affected by such possession (the plaintiff here) has no claim of title to the thirty three thousand acres or any part thereof, and such possession does not operate as an ouster of the plaintiff, nor a breach of his covenant of warranty. (4) The court instructs the jury that the covenant of warranty on which this suit is brought was not broken, nor did the right of action accrue, until the plaintiff or his predecessor in the title was ousted or evicted; and there was no such ouster or eviction until actual pos-

session was taken of the land in controversy—that is, the interlock. (5) The court instructs the jury that if they find from the evidence in this cause that A. W. Wilson, on the 22d day of September, 1875, sold and conveyed an undivided one-half of six thousand, three hundred acres of land to J. M. Irvine, by deed of general warranty; and that J. M. Irvine devised it to Mary W. Irvine, who conveyed the same to the plaintiff; and that a portion of said six thousand, three hundred acres, to wit, three thousand, five hundred and ninety five acres, is included within the lines of the said Smith patent of one hundred and twenty thousand acres; and that the land within the interlock was wild and unimproved until the fall of 1890 or the winter of 1890-91, and at the time the trustees of the Guyandotte Coal Land Association entered upon said three thousand, five hundred and ninety five acres, and took actual possession of the same, and held the same up to the time of bringing this suit—you will find for the plaintiff. (6) The court instructs the jury that, if they should find for the plaintiff, the measure of damages is the amount received by the defendant for the interlock; that is, the same which would be had by multiplying the number of acres contained in the interlock by the price per acre which the defendant received for the whole—*i. e.* ten thousand dollars for six thousand, three hundred acres, or $1.5873 per acre, and $5,706.34 for the 3,595 acres contained in the interlock. (5) The court instructs the jury that the defendant, by his plea of covenant performed, admits the covenant set out by the plaintiff in his declaration, and that the burden of showing that the defendant has performed his said covenant is upon the defendant. (8) The court further instructs the jury that the defendant has pleaded the statute of limitations, and the burden of showing that the plaintiff's right of action accrued more than ten years prior to the institution of his suit is upon the defendant. (9) The court instructs the jury that the defendant must show to your satisfaction that Low and Aspinwall, or those under whom they claim, must have taken actual possession of the lands embraced within their claim for a period of ten years prior to the institution of this suit, and that said possession must be actual, adverse,

continuous, and uninterrupted for a period of ten years prior to the institution of this suit, in order that the defendant may bar the plaintiff's right of recovery in this suit by the defendant's plea of statute of limitations. (10) The court instructs the jury that if they find from the evidence in this cause that the defendant introduced a witness in this cause who testified as to any material fact therein, and that the testimony of such witness was not explained, contradicted, or denied, then the defendant is bound by such testimony."

The plaintiff also moved the court to submit to the jury the following interrogatories, for them to answer in addition to the general verdict: "Question No. 1. Beginning on the left fork of Twelve Pole, where the Low and Aspinwall or Smith line crosses said Twelve Pole on the north, is there a contiguous, continuous chain or series of farms in the actual possession of persons owning them, which are held under a title adverse to the Smith or Low and Aspinwall title, extending to the Smith line of said Smith survey? Question No. 2. Does the interlock in question in this suit lie wholly on the west side of the junior holdings mentioned in question No. 1? Question No. 3. Have the trustees of the Guyandotte Coal Land Association, or any one under whom they claim, ever had actual possession of any part of that part of the Smith survey lying west of the series of junior grants mentioned in question No. 1, except that which was taken of the interlock in question in 1890 and 1891? Question No. 4. Prior to the possession taken by Clark *et al.* trustees, of the interlock in question in 1890 and 1891, does the testimony in this case satisfy you that the tenants of Low and Aspinwall, or the tenants of those under whom they claim, could have gone from their places of occupancy to the interlock in question, without crossing lands held adversely to those claiming under the Smith title?" To which the defendant objected. The court sustained the objection, and the plaintiff excepted and thereupon the defendant prayed for the following instructions: "(1) The jury are instructed that if they find from the evidence in the case that the trustees of the Guyandotte Coal Land Association, the holders of the alleged paramount title and

those under whom they claim, own, under said alleged paramount title, several contiguous and coterminous tracts, pieces, or parcels of land, embracing the land in controversy shown on the map made and filed in this case as the lap or interlock, and at any time prior to conveyance by Mary W. Irvine to the plaintiff, Ilsley, dated the 7th day of August, 1890, and shown in evidence, had taken and held actual possession of any part or parcel of any of the said coterminous tracts under the title papers shown in evidence, then they and those under whom they claim are in law held to be in the actual possession of the whole of each and all of said coterminous tracts not in the actual adverse possession of some third person, and including, as well, the wild and uninclosed land as the improved land; and such possession is held to include the alleged interlock, however far it may be removed from the *pedis positio* or actual inclosure, provided the said interlock was not then in the actual adverse possession of some person claiming under the Wilson title. (2) The jury are further instructed that if they find from the evidence in this case that at the time of conveyance from the defendant, Wilson, to J. M. Irvine, shown in evidence, and bearing date on the 22d day of September, 1875, that the part of the land thereby attempted to be conveyed, embraced by the alleged interlock or lap with the Smith survey of 120,000 acres, now claimed by the trustees of the Guyandotte Coal Land Association, was in the actual possession of those under whom said trustees claim by a title paramount to the title conveyed by said Wilson to Irvine, then there was a breach of said convenant in said conveyance *eo instanti*, and, if more than ten years elapsed from that time before the bringing of this suit, the action is barred, and the jury should find for the defendant. (3) The court instructs the jury that if they find from the evidence in this case that at the time of the execution of the deed from the defendant, A. W. Wilson, to Irvine, on the 22d day of September, 1875, there was an outstanding and paramount title in those persons under whom the trustees of the Guyandotte Coal Land Association hold to that portion of land so conveyed by Wilson that is described as the interlock, and if they further find

that the land embraced in the interlock was not at the date of the conveyance aforesaid from Wilson, and that no possession was passed by Wilson to Irvine, and that the plaintiff, Ilsley, purchased the land in the said interlock from Irvine, and not direct from Wilson, and is seeking to recover upon the covenant of general warranty made by Wilson to Irvine in the deed aforesaid, then the covenant so sued upon was one that did not run with the land; Ilsley can not recover thereon, and the verdict should be for the defendant. (4) The court instructs the jury that if they find from the evidence that the persons under whom the trustees of the Guyandotte Coal Land Association hold were at any time ten years prior to the institution of this suit, and still are, the actual owners by paramont title of the four Smith surveys described in the title papers and evidence in this case; that said Smith surveys are contiguous; and that the said trustees, or those under whom they hold, at any time ten years prior to the institution of this suit entered upon and took possession of any part of either of said Smith surveys, claiming under said title; and that there was not at the date of such entry, and has not been since, any actual, visible adverse possessions of land embraced in the interlock herein—then the verdict should be for the defendant. (5) The court further instructs the jury that a covenant of general warranty presupposes the passing of an estate to the covenantee; and that if they find from the evidence in this case that at the date of the conveyance from Wilson, the defendant, to Irvine, of the land in the interlock herein, there was a paramount title to said interlock in those under whom the trustees of the Guyandotte Coal Land Association claim, and no possession was passed to Irvine under the Wilson deed aforesaid, then no estate in said land was passed to said Irvine, and the covenant sued on is void, and the verdict should be for the defendant." To the giving of which instructions the plaintiff objected, and the court overruled the objection as to Nos. 1, 2, and 4, and sustained the same as to Nos. 3 and 5, and refused to give them, and the defendant excepted.

The case was submitted to a jury, and a verdict was found for the defendant; and thereupon the plaintiff

moved the court to set aside the verdict, and award him a new trial, which motion the court overruled, and the plaintiff excepted, and applied for and obtained this writ of error.

The first assignment of error relied on by the plaintiff in error is as to the action of the court in refusing to give, at his instance, instructions Nos. 2, 3, 4, 5, 7, and 8, asked for by the plaintiff. In seeking a proper solution of the questions raised by this assignment of error, we look first to instruction No. 2, and ask the question: Did the circuit court err in refusing this instruction? It presents for our consideration the question whether, where a party is the owner of a large body of land, which forms an interlock with a smaller survey, and said large body of land is divided by a string of narrow consecutive surveys, running entirely across it, held by junior patents, and the owner of said large tract takes possession of his land by actual improvement on the east side of said string of surveys, and the point at which the interlock occurs being on the west side of said surveys, the possession taken by the owner of said large survey on the east side of said string of surveys extends beyond them, and operates as possession of the land on the west side thereof within the interlock. Now, the evidence shows that the Low and Aspinwall or Smith survey included within its boundaries a portion of the six thousand three hundred-acre survey, which was conveyed by the defendant, Andrew W. Wilson, to J. M. Irvine, with covenants of general warranty, which tract was subsequently devised by said Irvine to his wife, Mary W. Irvine, and which was conveyed by her to the plaintiff, and formed an interlock therewith; that actual possession was taken of said Smith survey on the east side of said string of surveys. Did such possession have the effect to extend to its entire boundaries, including the portion within the interlock, or did the severance of said large tract by said string of junior surveys destroy the continuity of the possession of the entire tract? I can not think that the well recognized principle that possession of a part is possession of the whole depends for its verity upon the continuous contiguity of each clod of earth in the entire survey with

its adjoining clod. But when the question is presented whether the possession taken of a large survey extends to a portion of the same which is segregated from the residue by parcels of the tract held by junior patentees, extending in a narrow strip across the large survey, its solution is not affected by the fact that it is separated from the residue. The question to be answered in solving this *quære* is, rather whether it is part of the original survey held by the senior patentee? And when this is answered affirmatively, the possession of such senior patentee must be considered to extend to and embrace such portion of the original survey. If such was not the case, a railroad acquiring title to a strip of land one hundred feet wide across the tract of land would sever and discontinue the effect of the possession taken on one side of said railroad from the residue of the tract, and deprive the owner of the entire tract of the benefits accruing from his possession.

In the case we are considering, it appears to be conceded that neither the owners of the land included in the elder patent, nor those claiming under the defendant, Wilson, had possession by actual *pedis positio* taken within the interlock until 1890 or 1891; and the question as to whether the defendant can avail himself of the statute of limitations depends upon whether the eviction occurred when the trustees of the Guyandotte Land Association took actual possession by improvements made within the interlock in 1890 or 1891, or at the time of conveyance made by the defendants. It appears that the owners of the senior patents took actual possession, and made improvements upon their land outside of the interlock, and on the east side of the line of narrow contiguous surveys which sever the land of said senior patentee some time anterior to the date of the conveyance from the defendant, Wilson, to J. M. Irvine; but, as indicated above, we do not think said line of narrow consecutive surveys held under junior patents would limit the possession of said senior patentees to that side of said line of narrow surveys on which said actual improvement was made; and, this being the case, said possession would extend to the exterior boundaries of said senior patent, and neither party

having made any improvement within the interlock, the owner of the six thousand three hundred-acre tract would be limited by the boundaries of the senior patent, and he would be excluded from the interlock. In the case of *Cline's Heirs* v. *Catron*, 22 Gratt. 392, Anderson, J., in delivering the opinion of the court, says: "It is now well settled that where there is an interference of patents, so that they lap or interlock, the occupation or residence of the junior patentee upon a part of his tract outside of the interlock does not give him possession of that part of his tract which is embraced within the limits of the elder patent, but his possession is restricted by the boundary of the elder patent. But if he has an actual occupation and improvement of a part of the interlock, and the elder patentee has actual possession of no part of it, the actual possession of the junior patentee is coextensive with the limits of his patent, and is exclusive and adversary, and if continued uninterruptedly for the period of limitation, defeats the elder patentee's right of entry, or his better title, as the case may be." The case of *Koiner* v. *Rankin's Heirs*, 11 Gratt. 420, is a leading case upon this question. On page 427, Lee, J., delivering the opinion of the court, says: "The elder patentee, under his grant, acquires at once constructive seisin in deed of all the land embraced within its boundaries, although he has taken no actual possession of any portion thereof. The junior patentee, under his grant, acquires similar constructive seisin in deed of all the land embraced by his boundaries, except that portion within the interlock the seisin of which had already vested in the senior patentee; citing *Clarke's Lessee* v. *Courtney*, 5 Pet. 318, 354; *Langdon* v. *Potter*, 3 Mass. 215. In this state of the case, if the junior patentee settle upon that portion of the land within the interlock, claiming the whole within his boundary, he thereby ousts the senior patentee of his constructive seisin, and becomes actually possessed to the extent of his grant. *Calk* v. *Lynn's Heirs*, 1 A. K. Marsh. 346; *West* v. *Price's Heirs*, J. J. Marsh. 380; *Fox* v. *Hinton*, 4 Bibb. 559. Here possession of part is possession of the whole. But, if his settlement be outside of the interlock, there the possession of part is to be construed in reference

to the conflict of boundaries; and with whatever claim it be taken, it gives him possession of that part of the land only lying without the interlock; of that within, he does not thereby acquire the possession. The constructive possession which he would have gained if there had been no conflict does not take effect; and there is nothing which can serve to overcome the constructive seisin in deed of the elder patentee, and work an ouster. To effect this, there must be an actual invasion of the boundary of the senior patentee, by some act or acts palpable to the senses, and which would serve to admonish him that his seisin was molested. He is, of course, presumed to know his own boundary; and if that be invaded by plain, open, visible acts of possession on the part of the other, and he submits or fails to assert his right, an ouster will be accomplished, and he shall be said to be disseised."

Now, in further consideration of the question as to whether actual *pedis positio* was taken on the east side of said line of narrow surveys, such possession should be limited to the said line of narrow surveys. Suppose those holding under the senior patent allowed the land therein described to be returned delinquent for the nonpayment of the taxes thereon, no one for a moment would claim that the portion of said large survey thus separated from the residue would not be returned delinquent with the rest of the tract, or that, if a sale was made of the entire tract for such delinquency, the purchaser would not thereby acquire title to the entire tract, including the portion segregated by said narrow surveys from the rest of the tract. The lien for the taxes extends to every portion of the tract, whether separated from the main tract by strips of land which have been sold by the owner, or strips of land which have been acquired by junior patents, or by adversary possession under color of title. The portion of the land thus separated from the rest is still a part of the whole tract, and, as we have seen, the possession of a part is possession of the whole, and the possession of the larger portion of the tract is not limited by the lines of said consecutive surveys which run across it, but it extends to and embraces the separate portions as well. A declaration in ejectment

against a party in possession of the main body of the land embraced in said senior patent would claim the entire tract to its exterior boundaries, and a judgment for the plaintiff would include the land embraced in the exterior boundaries, less the junior patents and tracts within, which were held by good title. The owner of one hundred thousand acres of land can not take actual possession of it by placing all the coal it contains in barges or cars, or by pumping the oil therefrom into tanks or barrels, or by cutting and shipping all the timber found in its forests; neither can he till the soil on every portion of it, and for this reason the statute provides (section 19 of chapter 90 of the Code) that "in a controversy affecting land, when a person claiming under a patent, deed or other writing, shall enter upon and take possession of any part of the land in controversy under such patent, deed or other writing for which some other person has the better title, such adversary possession under such patent, deed or other writing shall be taken and held to extend to the boundaries embraced or included by such patent, deed or other writing, unless the person having the better title shall have actual adverse possession of some part of the land embraced by such patent, deed or other writing."

In the case of *Tremaine* v. *Weatherby*, 58 Iowa, 615 (12 N. W. 609) in which twenty acres of an eighty acre-tract was separated from the rest by a river, the court said: "It is not practicable nor possible for a party to be in actual possession of every part of a tract of land which is cut up by streams or sloughs, by bluffs, or the like. He can not have the whole of such a tract in the grasp of his hands or under his feet. If the owner of eighty acres of land breaks and cultivates sixty acres, and up to a slough, leaving twenty acres unbroken and unused, it would be unfair to say that his possession of the twenty acres was not actual and adverse because it is cut off from the other land by a stream, a bluff, a thicket, or a slough." Prof. Minor, in volume 2 of his Institutes, at page 582, groups the general principles applicable to conflicting grants as follows. He says: (1) That where the older patentee has had no actual possession of the land contained

in his grant, and the later patentee enters upon the land, and takes and holds possession of any part thereof, claiming title to all within the bounds of his grant, it is an adversary possession of the whole to the extent of the limits of the later patent, and to that extent is an ouster of the seisin or possession of the older patentee as to those lands—citing *Overton's Heirs* v. *Davisson*, 1 Gratt. 223, 224; *Koiner* v. *Rankin's Heirs*, 11 Gratt. 427, 428; *Cline's Heirs* v. *Catron*, 22 Gratt. 392. (2) That if the elder patentee is in the actual possession of any part of the land in controversy at the time of the junior patentee's entry thereon, the latter, by such entry, gains no adversary possession beyond the limits of his mere inclosure, cultivation, or actual use, without an actual ouster of the older patentee from the whole of the disputed territory— citing the same authorities, and also *Turpin* v. *Saunders*, 32 Gratt. 37, 39, 40. (3) That when the elder patentee is in actual possession of part of his own grant, but not of any part included in the junior patent, the entry and possession of the junior patentee upon a part of his grant which yet is not a part of the land in controversy will be limited to his mere inclosure or actual use. *Green* v. *Liter*, 8 Cranch, 229; *Taylor's Devisees* v. *Burnsides*, 1 Gratt. 196, 197; *Overton's Heirs* v. *Davisson*, *Id.* 224; *Koiner* v. *Rankin's Heirs*, 11 Gratt. 427-429: *Cline's Heirs* v. *Catron*, 22 Gratt. 392; *Turpin* v. *Saunders* 32 Gratt. 37-40. (4) Where the senior patentee is in actual possession of the lands of his patent lying within the bounds of the junior patentee, and the latter enters on and holds part of the lands in controversy which are embraced within his patent, it is an ouster of the senior patentee, not only to the limits of the junior patentee's actual close or use, but to the limits of his grant—citing the same authorities. Now applying the law as set forth by Proffessor Minor in the the third clause above quoted to the facts of this case, the elder patentee was in actual possession of part of his own grant, but not of any part included in the junior patent, that is, the six thousand, three hundred acre-tract. The entry and possession of the junior patentee upon a part of his grant which yet is not a part of the land in controversy (that is, the interlock) will

be limited to his mere inclosure or actual use. As I understand the law, it is that where the senior patentee is in actual possession of his grant, but outside of the interlock, his possession, as before stated, is limited by the boundaries of the elder patent; and the junior patentee in this case not having been in possession of the interlock, but his possession being outside thereof, and the possession of the elder patentee extending to the boundaries of the elder patent, the defendant, by his deed, failed to convey to J. M. Irvine the land within the interlock, and the eviction occured on the date of that deed, to wit, the 2d day of September, 1875.

In view of these authorities and the conclusions above indicated, we can not say that the circuit court committed any error in rejecting instruction No. 2, asked for by the plaintiff. The court committed no error in rejecting instruction No. 3, asked for by the plaintiff, for the reason that it appeared that the thirty three thousand acre-tract and the one hundred and twenty thousand acre-tract were adjoining and coterminous grants, owned and held by the same patentees; and it also appears that the grantors of the Guyandotte Land Association had tenants upon the one hundred and twenty thousand as well as the thirty three thousand acre survey; and, if they only had tenants upon one of said tracts, yet they were coterminous. It is held in the case of *Overton's Heirs* v. *Davisson,* 1 Gratt. 217 (sixth point of syllabus) that, "upon the question of adversary possession, it is immaterial whether the land in controversy is embraced by one or several coterminous grants of the older or younger patentee. In either case the land granted to the same person by several patents is to be regarded as forming one entire tract." Under this ruling, I think instruction No. 3 was properly rejected. Instructions Nos. 4 and 5, asked for by the plaintiff, were also properly rejected by the court, upon the principles hereinbefore stated, and under the authorities cited and quoted. Instruction No. 7 states the law as held by the Court in the case of *Riddle* v. *Core,* 21 W. Va. 530, cited by C. E. Hogg in his valuable work on Pleading and Forms (page 310 and note 1) in which case it is held that "where, in an action of covenant for breach of war-

ranty of title, the declaration sets out the making of the deed and the general warranty of title therein contained, and no plea of *non est factum* is pleaded, but the only pleas are 'covenants performed' and covenants not broken, the making of the deed and the warranty are admitted by the pleadings and no proof thereof is necessary." It is also true that, under the plea of covenants performed, the burden of proving the performance is upon the defendant. Instruction No. 8 also states correctly the law as to the burden of proof under the plea of the statute of limitations, but, under the evidence which appears in the record, the defendant appears to have assumed these burdens, and the plaintiff was not prejudiced by the refusal of said instructions 7 and 8. Instruction 6 does not properly state the mode of arriving at the amount of damages in case the plaintiff had obtained a verdict, but, owing to the result, there was no necessity of applying the instruction, and the plaintiff was not prejudiced by its refusal. Instructions Nos. 1, 2, and 4, which were asked for by the defendant, and were given to the jury at his instance, as I think, propound the law correctly, for reasons hereinbefore stated, and the court committed no error in giving them to the jury.

The next error assigned is as to the action of the court in refusing to submit to the jury the interrogatories presented by the plaintiff. Upon this question this Court held in the case of *Wheeling Bridge Co.* v. *Wheeling & B. Bridge Co.* 34 W. Va. 155 (11 S. E. 1009) that "submitting to the jury under our statute particular questions of fact is within the discretion of the trial court, subject to review; but it is not erroneous to refuse to permit such questions to be propounded when they are immaterial or irrelevant, and unless the answers thereto, if contrary to the general verdict, would control the same, and be conclusive of the issue." Applying this test to the interrogatories which are quoted above, and which the plaintiff moved the court to submit, my conclusion is that the court committed no error prejudicial to the plaintiff in declining to submit said interrogatories to the jury.

The important and material question in this case was presented by the plea of the statute of limitations. If the in-

terlock between the Smith survey and the six thousand and three hundred acre-tract was in possession of the trustees of the Guyandotte Coal Land Association, who were holding it under paramount title at the date of the conveyance from A. W. Wilson to J. M. Irvine, then there was a breach of the warranty on the day said deed was executed, and the statute of limitations began to run from the 22d day of September, 1875. Greenleaf on Evidence (volume 2, § 241, under the head of "Warranty") says: "A breach of this covenant is proved only by evidence of actual ouster or eviction, but it need not be with force; or if it appears that the covenantee has quietly yielded to a paramount title, whether derived from a stranger or from the same grantor, either by giving up the possession or by becoming the tenant of the rightful claimant, or has purchased the better title, it is sufficient. So, if he has been held out of possession by one in actual possession, under a paramount title, at the time of sale it is said to be a breach."

In the case under consideration, as I have endeavored to show by applying the law to the facts adduced, the interlock hereinbefore mentioned was in possession of strangers, under a paramount title at the time said conveyance was made by the defendant to J. M. Irvine, and the statute began to run from that day, and constituted a bar to this action. As before stated, the verdict was for the defendant, and the plaintiff moved the court to set aside the verdict, and award him a new trial, which motion was overruled, and the plaintiff excepted; and, while this action of the court is not assigned as a ground of error, the plaintiff in error, in his petition, prays that the verdict may be set aside, and a new trial awarded him. The court, however, has failed to certify all the facts proved, or all of the evidence offered; and for this reason, as this Court has frequently held, we can not review or reverse the action of the circuit court upon the motion to set aside the verdict, as contrary to the evidence.

For these reasons, the judgment complained of must be affirmed, with costs, *etc.*